JACK *v.* McKEE.

9   235
141  312,
9      235
e 30 SC ²131

In an action to recover the value of services, it is competent to prove that a promissory note was given by defendant, payable after his death, without producing or accounting for the note, to show the value he placed on the services.

The measure of damages for breach of a contract to compensate a party for services by a gift of land is the value of the land, and the contract is not within the statute of frauds.

Where a contract was proved to compensate a party by a gift of land for services to be rendered until the testator's death, a bond delivered by the promisor, for the payment of money, stating that to be the amount of his indebtedness on a final settlement, is *primâ facie* evidence of a final settlement of all claims up to that date. But if it be shown that there were other pecuniary transactions preceding the date of the bond, and the services were continued up to the death of the promisor, it is a question for the jury, whether the promise to give the land was included in such settlement; if not, it still continues binding.

In error from the Common Pleas of Westmoreland.

The plaintiff declared upon a contract by the defendant's tes-

tator, that in consideration of the plaintiff continuing to live with him and take care of his house until he died, he would give her a certain piece of land; and also on the common counts.

The first exception was to the admission by the court of proof that the testator had given plaintiff a note for $1000, payable after the testator's death. The note was not produced, nor any account given of it.

The other exceptions were to the charge. The plaintiff proved the contract to give her the land, by Elizabeth McGarr, and by several witnesses proved promises to compensate her for her services; but none of these witnesses stated the mode agreed upon for doing this. Elizabeth McGarr stated that she had never been at the testator's house since May, 1842. It was in evidence, that in September, 1842, testator had given plaintiff the following instrument, upon a settlement had between them:—

"On final settlement, I stand indebted to Miss Ann McKee, two hundred and eighty-eight dollars, exclusive of two former notes, wherein David Eichar is bail. Witness my hand and seal, this 17th day of September, 1842.

"MATHEW JACK. [SEAL.]"

He had previously given her two bonds, guarantied by Eichar, in consideration of land purchased from plaintiff. But it was proved that in the fall of 1842, plaintiff was the owner of certain cows, grain, &c., which she then sold to the testator.

There was also evidence, that after this she had left the testator's house for some months, on a visit to her sister; but the jury found that this was with his consent, and partly on his business, and that she afterwards returned and continued with him until his death.

BURRELL, P. J., instructed the jury, that the measure of damages for the special contract, if proved, was the value of the land agreed to be given as a compensation for her services. (This was the second exception.) He further said, the bond of September 17th was *primâ facie* evidence of a final settlement between the parties of all matters prior to that time, unless plaintiff had shown that her services were not then taken into account. But if this bond was in settlement of the purchase of the grain and cows only, then it would not conclude her. (This was the third exception.)

*Kuhns*, for plaintiff in error.

*Cowan*, contrà.

*Oct.* 23. ROGERS, J. (after stating the exception to evidence.)— The objection to the admission of the evidence is general. If, therefore, it was admissible for any purpose, there was no error. Had it been offered as a substantive claim under the money counts, it could not have been received; as, in that case, it would be necessary to produce the note or give evidence of its loss, before proving its contents. Had the testimony been opposed on that ground, no doubt the plaintiff would have declined any such intention, as it is very evident, from the whole course of the cause, such was not the view taken of it, either by the plaintiff's counsel or the court. But although not testimony for that purpose, we see no objection to it as an item of evidence showing the intimate relation of the parties to each other, and the value the testator attached to her services. It is rather the proof of a fact which may be made out without the production of the paper or proof of its loss, as was decided at this term. That such evidence may be given to show the relations of the parties to each other, appears from Postens *v.* Postens, 3 W. & S. 127.

The plaintiff contends the court erred in leaving it as a question of fact for the jury to find, that the note of 17th September, 1842, was not a final settlement of all accounts between plaintiff and defendant's testator, including her claim for services. We see no exception to the course pursued by the court. After stating to the jury that the settlement was *primâ facie* evidence of a final settlement of all matters between the parties up to that period, they properly observe that the plaintiff contends that compensation for services formed no part of the settlement in September, 1842. That she had sold land, grain, and cows to M. Jack, and that the settlement was of those transactions; that her contract was not abandoned, as was alleged by defendants, but that she went down the river for a temporary absence, with Matthew Jack's consent; and that she returned to his house and service under his direction, and remained there till his death. If there be any evidence of these facts, it was an answer to the allegation that the settlement included her claim for services under the special contract. But admitting this view of the case, the defendants contend there is no evidence whatever to rebut the *primâ facie* evidence, and that it was error to refer it to the jury for their decision; and that the defendant was entitled to a peremptory charge that there was a full and final settlement between the testator and the plaintiff, including the compensation for services. On the argument of this point, great stress is laid on the testimony of Elizabeth McGarr. The

settlement took place on the 17th September, 1842; and the last time she was present was some time in the spring of 1842. From this it is contended that she cannot give evidence as to the intentions of the parties to the settlement. That this weakens the force of her testimony on the point that she left Jack for a temporary purpose, is most true. But it does not destroy it altogether, as she positively asserts that Ann McKee never left Jack to stay away altogether. She went, as she says, on a visit to her sister. It is true, she also adds, she went away in the fall of 1841, and returned in the spring of 1842. She went partly on his business and partly on her own. In corroboration of this belief (for perhaps it is nothing more), it appears that many letters passed between Jack and Ann McKee, which, unfortunately, though given in evidence, are not now forthcoming; and this continued up to the time of her final return and resumption of her employment as his housekeeper. It also appears in evidence, by several witnesses, that Jack was exceedingly anxious for her return, and that he applied to others to hasten that much-desired event. Now, striking out all the testimony of Elizabeth McGarr, in relation to the settlement, how does the case stand? It must be recollected, that after the verdict of the jury, we must take it as an established fact, that there was a special contract between the parties, not to take effect, so far as regards the payment for her services, until the death of Jack; that there is *some* proof, at least, that she left Jack's house for a temporary purpose only, that she was still considered as in his employment, and that there were other transactions and dealings to which the settlement might refer. In view of all these facts, what is the natural presumption? It seems to me the presumption is, that it was a settlement of their pecuniary transactions, and cannot, by any fair construction, be made to apply to services not yet ended, and for which payment could not be demanded until the death of Jack. And this view of the case is strengthened by the words of the settlement itself. "On final settlement," says Jack, "I stand indebted to Miss Ann McKee two hundred and eighty dollars, exclusive of two former notes whereon David Eichar was bail;" evidently referring to their pecuniary transactions. Not a word is said in reference to compensation for services, which cannot be accounted for on the supposition that they were included in the settlement. It is imputing to Jack an ignorance of the common mode of transacting business; which cannot in justice be attributed to him, as he was at least a man of ordinary capacity. So far from there being no proof proper

to be submitted to a jury, it seems to me impossible to doubt that compensation for services never entered into the contemplation of either of the parties, when the settlement was made. On the hypothesis that the contract is as it has been found by the jury, a subsisting contract, it would be charging both with folly to suppose they had any such intention.

I come now to consider a point much pressed and relied on in this and a subsequent case, Bash *v.* Bash's Administrator, argued at this term. It is the answer of the court to the second point: " That the plaintiff is only entitled to such damages as would be a reasonable compensation for the services rendered." The court gave a negative answer to the point, and instructed the jury, that the measure of damages was the value of such lands, formerly of her father, as belonged to Mathew Jack at the time of his decease. To understand the answer, it is necessary to remark that the contract as found by the jury was, that the plaintiff was to give her services to Jack during his life, and, as a compensation, Jack was to give her at his death a farm which formerly belonged to her father, containing *one hundred* acres, worth, according to the estimate of the plaintiff, *three thousand dollars.* Jack, wholly oblivious of his contract, made his last will and testament, devising the residue of his estate, including the tract in question, to his brother and executor, William Jack. This suit is brought to recover the value of her services on a breach of that contract; and the question is, What is the measure of damages ? The defendant contends it is a reasonable compensation for her services as between master and servant; the plaintiff insists she is entitled to compensation, according to the estimate of the parties themselves; or, in other words, to damages to the amount of the value of the land. We are of opinion the latter is the correct view of the question, on principle and authority. I feel some diffidence in adverting to the case of Rohr *v.* Kindt, 3 W. & S. 563, inasmuch as it is said to be a dictum, and one of my own. But as subsequent reflection and investigation have convinced me the law is there properly ruled and is supported by other authorities, as I shall subsequently show, I cite the case as a leading authority in this state. With all deference, it is, I think, something more than a dictum; it was intended to furnish the rule for the assessment of damages on another trial. The reversal of the cause made this disposition of the case necessary, and consequently the principles there asserted met the concurrence of the whole court. It is there ruled, that if the consideration of a covenant to convey land be the performance of an act by

the vendor, and it is done, the measure of damages for the non-performance of the vendor is the value of the land.   That is the case of a written agreement, this of a parol contract; a difference, however, which does not in my judgment affect the principle.   In the course of the opinion this language is used in illustration of the rule, which, if sound, decides this case.   "But is the value of the land," says the judge, "the measure of damages? and this may depend on circumstances.   Thus, if the contract had been performed before the offer to rescind, as, for example, when A., in consideration that B. will perform certain services of an uncertain value, agrees to give him a horse or a tract of land, particularly named and specified, B. performs his part of the contract, and then A. refuses to deliver the horse or convey the land, the measure of the damages is the value of the horse or land, as the case may be, because that is the *stipulated reward* of the services of B., whatever may be the intrinsic value, whether more or less. It is the contract, and of course binding on both."   This is said to be the dictum of the judge, and of course not binding as an authority.   Be it so.   Then the question arises, Is the law, as stated, supported by principle and authority?   For if it be, there is an end of this case, for nothing can be more apposite to the point now under discussion.   Let it be remembered that the jury have found that the testator, Jack, contracted, in consideration of the services of the plaintiff, to give her a tract of land particularly named and specified.   The services to be performed were of uncertain value and of uncertain duration.   They continued during the lifetime of Jack, and the consideration was not to be paid until his death.   Whether the compensation was adequate or inadequate depended on the contingency of his death.   It was necessarily uncertain, as Jack might have lived fifty years, or he might have departed this life within one year.   She also might have died before Jack; when, by the terms of the contract, his representatives would have been exonerated from payment altogether.   Whether the contract was or was not prudent on either side, does not enter into the question.   It was a contract which the parties were competent to make, and which equally binds both.   I understood it to be conceded, that the rule is well stated as to the horse, but denied as to the land.   In principle, it is not very obvious what difference it can make, whether the compensation is to be paid in land, or in an article or articles of personal property.   It is the value only, in either case, which can be recovered, and one is as easily estimated as the other.   In neither is there a transfer of the title.

On such a contract the plaintiff cannot recover the horse, although it is granted he may recover his price. And although he cannot recover the land, why may he not recover its value? The action in both cases is brought to recover the value of the services; and the question is in both, What is the rule in estimating the damages? The distinction which has been attempted and laboured with great zeal and apparent conviction is, that in the case of real property the contract is within the statute of frauds, and in the other case it is clear of that difficulty. This is a distinction which it will be my duty to examine in another part of this opinion, but before doing so, it will be convenient to inquire how the point stands on authority.

I have already adverted to the case of Rohr v. Kindt, and the dictum, as it is called, of the judge there. Is that case supported by authority? I will now proceed to show that it is. Thus in Burlingame v. Burlingame, 7 Cow. 92, it is ruled, "that a parol contract to pay for certain services on their being performed, by conveying a certain piece of land, the services being performed pursuant to the contract, is not void by the statute of frauds, but the value of the services can be recovered according to the value of the land promised, which may be resorted to as a measure of damages, though the contract to convey the land cannot be enforced." There, as here, the contract was, that in consideration of certain services to be performed, defendant agreed to convey a certain piece of land; there, as here, the suit was brought to recover compensation for the value of the services; there, as here, the statute of frauds was pleaded in bar to the action; and there, as here, the value of the land was claimed as the measure of damages. In no one particular, therefore, can it be distinguished from this case. In principle, and almost in very fact, the cases are identical. This, be it remembered, is a New York case, where, as is understood, a parol contract for the sale of land is void, and no action can be maintained for its breach. Whereas in our state, a suit will lie, as is ruled in George v. Bartoner, 7 W. 530, in accordance (the doubts of counsel to the contrary notwithstanding) with the universal understanding of the profession in every part of the state. It is within my experience, and I believe of every member of the court, that such actions have been sustained without objection. That we have but few cases in the books may arise from there being no doubt of the law on this point, and because there are few men who will so far lose sight of every principle of faith and honour as to refuse to comply with a contract fairly made,

because it was by parol. If no cases of the kind have occurred in the county of Westmoreland, it is an evidence of the good faith and honour of its citizens, nothing more. But it is said the case of Burlingame v. Burlingame is overruled by King v. Brown, 2 Hill, 485. If it were I should regret it, but it would not change my faith in the correctness of the rule. But this is an entire mistake of counsel. King v. Brown, so far from overruling Burlingame v. Burlingame, in this particular affirms the principle as to the measure of damages. The case decides that when there is a parol contract to convey land, in consideration of a *specified* sum, payable in work, it is void by the statute of frauds and perjuries, and cannot be the foundation of an action. In such a case the party who has performed the labour may treat the agreement to convey as a nullity, and recover the value of the services under the common counts, not exceeding, however, the amount *fixed by the agreement*, with interest, but he cannot resort to evidence of the value of the land as a measure of damages. But if, in a contract of this nature, *no amount be specified*, and the payment is to be in a designated piece of land, the plaintiff may then prove the worth of the land, with a view of ascertaining the value of the services. The distinction taken is perfectly plain and just. When the amount of the value of the services is *specified* and *ascertained* by the parties, that is the measure of damages; but when it is not fixed, the value of the land is the measure of the damages. In this particular it expressly affirms the case of Burlingame v. Burlingame. It is true the latter case is partly overruled, but on this question it remains untouched. The error in Burlingame v. Burlingame was in holding that the plaintiff should have declared on the special agreement, and could not recover on the common counts. The same principle is also ruled in Hopkins v. Lee, 6 Wheat. 118, where it is decided that in an action at law by a vendee against a vendor for a breach of contract in not delivering the thing sold, the proper measure of damages is not the price stipulated in the contract, but the value at the time of the breach. Mr. Justice Livingston, who delivered the opinion of the court, says, after stating the rule, it can make no difference in principle whether the contract be for the sale of real or personal property. A view of the authorities, therefore, would seem to show that if any point can be settled, this is. But it is said that the recovery here is in contravention of the statute of frauds, and this is the point on which the defendant's counsel mainly rely. It will be observed the same objection was made and overruled in Burlingame v. Burlingame, and for reasons which are

incontrovertible. "It is contended," say the court, "that the statute of frauds is a bar to the action. To this objection it may be answered, the action is to recover for work, labour, and services, not to enforce the contract to convey land. It will readily be admitted that the agreement to convey is within the statute. The question is then presented, whether in any given case when one party has parted with his money or rendered services, and the consideration for so doing is a promise by the other party to convey land, the party who has rendered the services or paid the money is without remedy." The affirmative of that proposition is too monstrous to be seriously maintained. The statute of frauds only applies to a contract for the *sale* of land. But was this a contract for the sale of land? It is a contract for services to be paid in land, but not a contract for the sale of land. If it was a contract for the sale of anything, it was a contract for the sale of her services. This is a proposition so plain that the wonder with me is how any person can be prevailed upon to doubt it. It is in truth a contract of hiring, creating the relation of master and servant, and has no sort of resemblance to a contract of sale. What, then, is the measure of damages? To this we answer, the value of the land, because that is carrying out in good faith the contract of the parties. The agreement is to this effect: Jack agrees that for her services he will assure to her at his death a certain tract of land, or that he will give her the value thereof. He cannot, it is true, be compelled to convey the land, for two reasons: first, because this is not a sale of land; and second, because, if it were, the contract is by parol. But what principle of law or morality is there in refusing her damages commensurate with its value? The parties have fixed the *maximum* and *minimum* compensation, and what tribunal should be permitted to gainsay or frustrate their intention? Jack knew better than any other human being could know, the real nature and value of the services she was expected to perform; and if she has performed them in good faith, and so the jury have found, why should she not be allowed compensation according to the price estimated by themselves? The law of the contract is all she asks. It is said the executor cannot convey the land. And this is true; but, under the circumstances of this case, this is a flimsy pretext to avoid compliance with the contract of the testator. It happens, in this case, that William Jack, the brother of the deceased, is the executor and devisee of the land referred to in the agreement. Indeed he is the residuary legatee and devisee of the whole estate. He may convey if he chose, and no doubt she would cheerfully

receive a conveyance of the home of her fathers, rather than compensation in money. But be this as it may, the contract was with the testator, who acted in bad faith in refusing to make the necessary provision for assuring to her the title of the property, and, in breach of his agreement, devising it to another. It must be remembered the action is not for the violation of the contract (which it might have been in this state), but it is to recover compensation for the value of her services rendered to Jack in the helplessness of disease and old age. Having shown to my own satisfaction, at least, that this case is not embraced in the statute of frauds, I must be excused from wading in the labyrinth of cases cited, which only apply to contracts of sale. It would swell this opinion beyond all reasonable bounds to notice each case, although they have been examined and carefully noted. I think, however, I hazard but little in saying there would be no difficulty in proving, both on principle and authority, that even granting it to be a sale, the measure of damages would, notwithstanding, be the value of the land, because that would be the only mode to carry out the contract in good faith where the vendor refuses to convey. There is nothing in law or reason to prevent parties from fixing a certain sum for services to be rendered, or agreeing to give for such services, in case the contract is rescinded by the vendor, certain specified articles, either of real or personal property. And when the vendee is compelled to sue for his services, to recover according to the amount of the sum specified or the value of the article agreed to, be given, whether real or personal, or whether the contract be in writing or by parol. In such cases the vendor is guilty of bad faith in refusing to comply with his contract; and as the vendee is compelled to sue for his services, as in the case of the rescision of the contract, he cannot complain that he is obliged to pay the stipulated price, whether it be money or the value of the article agreed to be given in consideration of services which have been performed.

Judgment affirmed.