Argued January 19, decided February 7, 1911.

## JACKSON v. STEARNS.

[113 Pac. 30.]

FRAUDS, STATUTE OF—AGREEMENT TO CONVEY LAND.

1. Plaintiff, an attorney, prepared duplicate copies of a contract, wherein he agreed that, if he secured a decree quieting title to land, the defendant should deed him one-half of the land. Plaintiff signed both copies and mailed them to defendant, and commenced the action to quiet title. Defendant wrote plaintiff that if he would pay the cost of taking testimony he would sign the contract, to which plaintiff assented. Defendant did not sign the contract, but sold the property. *Held*, that the writing did not satisfy the statute of frauds (Sections 804, 808, L. O. L.) providing that agreements for the sale of real estate or any interest therein must be in writing and subscribed by the vendor.

PLEADING—CONCLUSIONS.

2. Where a cause of action was founded on breach of contract, it is a conclusion of law to allege that the sum claimed is a reasonable compensation for services performed.

FRAUDS, STATUTE OF—CONTRACT TO CONVEY LAND—QUANTUM MERUIT.

3. Where, under a contract, void by the statute of frauds, services have been performed in consideration of a conveyance of land, and the execution of a deed to the premises is refused, the agreement can be

abandoned by the party rendering the services, and he may recover on a *quantum meruit.*

FRAUDS, STATUTE OF—CONTRACT TO CONVEY LAND—QUANTUM MERUIT.

4. In an action founded on breach of contract for failure to convey land, which contract is void by the statute of frauds, the question of reasonable compenastion for services in legal proceedings concerning the land, cannot be considered.

From Josephine: HIERO K. HANNA, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by C. S. Jackson against A. W. Stearns to recover damages resulting from the breach of an agreement. The facts are that plaintiff, an attorney, prepared duplicate copies of a contract wherein it was stipulated that if he could secure a decree quieting the defendant's title to 320 acres of land, describing the premises, and would advance the court expenses, if so required, the defendant, in consideration thereof, would execute to him a good and sufficient deed to one-half of the real property so obtained. The plaintiff subscribed his name to the writings and sent them by mail to the defendant, and thereupon began in the proper court a suit in which Stearns was plaintiff and the parties asserting title to such lands were defendants, alleging in the complaint that the deed executed to them by Stearns was intended as security for the payment of a debt and praying that the mortgage be canceled. Issue having been joined, plaintiff wrote defendant that the cause had been referred in order to take the testimony. Upon the receipt of such information, the following letter was written:

"Canyonville, Ore., Oct. 26, '04.

"C. S. Jackson,

"Dear Sir: I received your letter and agreement, and you did not state whether your would stand good for Ira B. Riddle taking the evidence. If you will pay him I will sign the agreement and send it down. Please let me know as soon as possible. Yours respectfully,

"A. W. Stearns."

In reply Jackson wrote, *inter alia,* as follows:

"Yes; I will advance Mr. Riddle his costs, and please insert it in the contract and return my copy to me."

Stearns did not sign either copy of the contract, but upon the receipt of $300 from the adverse parties, he, without plaintiff's consent, dismissed the suit. Thereafter this action was commenced, the complaint stating in substance the facts as hereinbefore detailed, and averring that by reason of dismissing such suit plaintiff had been damaged in the sum of $4,500; that he had performed all the conditions of the contract required of him and would have recovered the lands, but was prevented from doing so by the wrongful acts of the defendant; that plaintiff was at all times ready, able, and willing to prosecute such suit to final termination and to recover the lands, the reasonable worth of all of which is $9,000, and the value of the part agreed to be conveyed to plaintiff for his services is $4,500; and "that by reason of defendant's wrongful acts he has unjustly enriched himself and the plaintiff has suffered great damage and loss in the sum aforesaid, which plaintiff alleges to be reasonable compensation for said services." Judgment is demanded for the sum of $4,500.

The answer admits that plaintiff is an attorney; that defendant retained him to perform the services specified; and that pursuant to such employment plaintiff instituted in the proper court the suit referred to, which defendant caused to be dismissed. All the other averments of the complaint are denied, and for a further defense it is alleged that plaintiff and defendant entered into negotiations with a view of making a contract whereby plaintiff was to receive a deed for the east half of the particular 160 acres described in the complaint; and that no writing or memorandum was ever signed by defendant or by any person on his behalf, respecting such nego-

tiations, in consequence of which the verbal understanding referred to in the complaint as a contract is void.

A reply having put in issue the allegations of new matter in the answer the cause was tried, but the jury, failing to agree, were discharged. The parties hereto thereupon stipulated that the testimony taken at that trial, supplemented by the depositions of certain witnesses, should be submitted to the court, which, considering the evidence, found the facts in effect as stated hereinbefore and as a conclusion of law based thereon found, *inter alia,* as follows: "The contract sued upon is for the conveyance of real property, and in order to be valid it must be shown to have been in writing and signed by the defendant. The evidence failing to show that defendant signed the alleged contract the plaintiff cannot recover in his action" —and from a judgment rendered in accordance therewith the plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Robert G. Smith and Mr. Commodore S. Jackson,* with an oral argument by *Mr. Jackson.*

For respondent there was a brief over the names of *Messrs. Fullerton & Orcutt,* with an oral argument by *Mr. Albert N. Orcutt.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The question to be considered is whether or not the conclusion of law quoted is deducible from the facts as found. As a matter preliminary to a determination of the inquiry, attention will be called to certain clauses of our statute:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring

the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law." Section 804, L. O. L.

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law: * * 6. An agreement * * for the sale of real property, or of any interest therein." Section 808, L. O. L.

It will be remembered that Jackson signed duplicate copies of the contract which he mailed to Stearns, but the defendant never subscribed his name to the writing, and no memorandum was executed by him unless it can be said that his letter of October 26, 1904, when read in connection with other correspondence is sufficient to answer the requirements of the statute of frauds. In the communication referred to Stearns promised to sign the agreement if Jackson would pay the referee's fees. The plaintiff's answer presupposes an insertion in the contract of his consent to advance such fees, a provision which, in substance, was originally included therein. It will thus be seen that both parties intended some affirmative acts should be performed by Stearns before the contracts would become effective.

Separate writings exchanged by parties and relating to the same subject-matter cannot constitute a contract between them unless it was then their intention that an agreement should be consummated by their correspondence. Bishop, Contracts (2 ed.) § 165. The writings stipulated that Jackson should receive from Stearns a deed conveying one-half of all the lands for which a decree quieting the title could be secured. The complaint avers that the land thus agreed to be granted to plaintiff for his services is a particular 160 acres, which is a

variance, while the answer alleges that the part promised by defendant was only the east half of such quarter section. As the contract did not specify the particular land which plaintiff was to receive and as an issue was joined in respect to the tract which he asserts was to have been conveyed to him, and that which the defendant claims was promised, oral evidence was necessary to substantiate the truth of the matter, and in such cases the writings cannot be read together so as to constitute a contract between them. 12 Enc. Ev. 16; 2 Page, Contracts, § 688; *Longfelolw* v. *Huffman,* 57 Or. 338 (112 Pac. 8). We conclude, therefore, that no written contract was effectuated by the parties.

It is maintained by plaintiff that the services which he agreed to perform were to have been compensated by a conveyance of land, and such being the case the value of the premises is the measure of the damages which he sustained in consequence of the defendant's conduct. Some of the cases relied upon to support the legal principle asserted will be examined. In *Jack* v. *McKee,* 9 Pa. 235, the declaration alleged that a parol agreement was entered into whereby defendant's testator, in consideration that plaintiff would continue to live at and take care of his house until he died, he would give her a certain piece of land; that pursuant thereto she performed the service, but the testator did not keep his part of the agreement, and devised the premises to others. In a suit to recover the value of the services on a breach of the contract it was held that the. agreement, though not evidenced by a writing, was not within the statute of frauds, and that the damages sustained were the value of the land and not a *quantum meruit* for the services rendered. The legislative assembly of Pennsylvania never adopted section 4 of the statute of 29 Car. II, c. 3, which provides that "no action shall be brought * * upon any contract

or sale of lands, tenements or hereditaments or any interest in or concerning them * * unless * * some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized" (Brown, Stat. Frauds [5 ed.] p. 648), or enacted any other clause in lieu thereof: *Bell* v. *Andrews,* 4 Dall. 152 (1 L. Ed. 779); *McDowell* v. *Oyer,* 21 Pa. 417, 425. In *Hertzog* v. *Hertzog's Adm'r,* 34 Pa. 418, 419, Mr. Justice WOODWARD, referring to the failure to accept such provision, remarks:

"The omission from our statute of frauds and perjuries, of the fourth section of the British statute, after which ours was modeled, left us free to sue on parol contracts, for the sale of lands."

In that case the doctrine announced in *Jack* v. *McKee,* 9 Pa. 235, was expressly overruled and it was held that in an action for the breach of an oral contract to convey land, in consideration of money paid or services rendered, the damages were to be measured by the amount of money expended or the worth of the labor performed, and not by the value of the land. In *Hertzog* v. *Hertzog's Adm'r,* 34 Pa. 418, 435, a dissenting opinion rendered in the case of *Malaun's Adm'r* v. *Ammon,* 1 Grant's Cas. (Pa.) 123, 145, is incorporated, wherein Mr. Justice WOODWARD, alluding to errors which might be committed by a court of last resort and relied upon as a controlling precedent, observes:

"For myself, I take occasion to say, that when, through accident, press of business, or misconception, a decision is pronounced which subverts a fundamental rule of property, and by consequence renders every man's estate insecure—which, under color of compensating personal services, strips families of their patrimonial acres—which, in short, subjects land titles to the changes and chances of parol evidence—the maxim of *stare decisis* bids us to go back to the old, straight, safe paths, and not

to blunder again and again, because we have blundered once."

In *Lipscomb* v. *Adams*, 193 Mo. 530 (91 S. W. 1046: 112 Am. St. Rep. 500), it appeared that a written contract had been executed, acknowledged, and recorded as required by law concerning agreements affecting real property, whereby plaintiffs, who were attorneys, stipulated to prosecute all suits necessary to recover for their client certain lands, in consideration of which service, if successful, she was to execute to them deeds for one-half of the real property secured by decree, or if a compromise were effected they were to receive a moiety either of the money or premises obtained in settlement. Pursuant to the agreement, plaintiffs began for their client proper suits, pending which she, in consideration of $600, compromised the controversy, executed to the parties who asserted titles to the lands, deeds of all her interest therein except as to 13 acres, and thereupon dismissed the suit without the consent of her attorneys. They thereafter brought suits against the persons to whom she had executed deeds to recover one-half of the land that was claimed under the contract with their client, which suits were compromised by the attorneys, who paid to one of the parties a sum of money for a quitclaim deed of his interest, and executed to another party a deed to a portion of the land in consideration of a conveyance to them of the remainder. The attorneys thereafter instituted a suit against Adams who, by *mesne* conveyances, held the legal title to the 13 acres, which were not included in the compromise, to recover a moiety of the land, and it was held that they were entitled thereto. It was further determined that a contract whereby attorneys, if successful in litigation for the recovery of land, were to receive one-half thereof, the moiety being worth $1,500 or $2,000, was not so unreasonable as to be unenforceable in equity,

though the amount of labor actually performed by the attorneys was small because of a compromise of the suit by the client without their consent. In that case the contract having been duly executed and recorded, the parties who purchased any of the real property described in agreement took the title to the premises with notice of the attorneys' claim to an interest in the land, and as the memorandum was in writing, expressing the consideration and subscribed by the party to be charged, the contract was not within the statute of frauds.

In *Weil* v. *Fineran*, 78 Ark. 87 (93 S. W. 568), which was an action by an attorney against his client, the complaint averred in the first count the plaintiff's employment to perform services for the defendant, and that she refused to permit him to do so, whereby he was damaged; and also alleged in another count that defendant was indebted to him for services rendered and money spent at her request of the reasonable value of a stated sum, and it was held that plaintiff was not entitled to recover on *quantum meruit* as he had not elected to treat the contract as rescinded. In that case it appears from an instruction that the defendant had agreed to pay $100 for plaintiff's services, and also promised to reimburse him for all sums of money expended on her account, and further to give him 20 per cent of her interest in a certain estate in case he could establish her right thereto and recover the same for her, and also by a power of attorney she appointed him her agent to procure such interest. It is impossible to state from an examination of the facts disclosed whether or not the estate to which the client's claim was to have been established consisted of personal or real property, but if it be conceded that it comprised only the latter class, the power of attorney, which must have been in writing and duly subscribed, undoubtedly afforded a memorandum sufficient to take the case out of

Sig. 3

the statute of frauds. Though the judgment was reversed in consequence of an erroneous instruction having been given, it was intimated that while the plaintiff was suing for a breach of the contract and asking for the resulting damages, the action was maintainable.

In *Wright* v. *Kansas City, etc., R. Co.,* 141 Mo. App. 518 (126 S. W. 517), which was a suit to enforce an attorney's lien for a fee based on a written agreement entered into by the attorney and his client whereby the latter was to pay the lawyer 50 per cent of any sum that might be secured in consequence of personal injuries which he has sustained, the contract stipulated that the client should not compromise or settle the claim without the written consent of the attorney. The defendant, having notice of the lien, demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action because the clause not to compromise the claim for damages rendered the contract unenforceable. The demurrer was sustained and the action dismissed, but upon appeal the judgment was reversed, the court holding that the contract was not void as contrary to public policy and that the validity of the provision could only be called in question in case the attorney undertook to enforce it against his client. In that case the agreement did not relate to real property, and, as the contract was in writing and signed by the client, the statute of frauds was not involved.

In *Davis* v. *Webber,* 66 Ark. 190 (49 S. W. 822: 45 L. R. A. 196: 74 Am. St. Rep. 81, 89), which was a suit to recover a stated sum for services performed by an attorney for his client, in securing a judgment and to declare and enforce a lien upon certain property, it was held that though the written contract subscribed by the parties, was void because of a stipulation that the client should not settle or compromise the controversy without the attorney's consent, compensation might be granted the attor-

ney for his services under the rule of *quantum meruit,* and the contract might be examined to ascertain what value the parties themselves considered the services reasonably worth. In that case the agreement, being in writing, was not within the statute of frauds. It is fair to assume that the suit was for recovery of the reasonable value of the services performed by the attorney, for Mr. Justice WOOD, in referring thereto, says: "Now, Webber, under the *quantum meruit,* should receive pay only for the services actually rendered."

In *Ham* v. *Goodrich,* 37 N. H. 185, an agreement to convey land in consideration of services to be rendered was held to be within the statute of frauds, yet, upon a *quantum meruit* to recover the reasonable worth of the services performed it was ruled that the value of the land was not the fixed measure of the damages, though such value was competent evidence to be considered in determining the question of damages. In that case one of the counts in the declaration in *assumpsit* was as follows: "That on the first day of January, 1824, the deceased, in consideration that the plaintiff agreed to live, with his family, with the deceased, take care of him and serve him till his death, promised to pay him so much money," etc.; and alleged that he deserved to have $5,000. It will thus be seen that a *quantum meruit* was relied upon as a basis for recovery.

Attention has been called to the case of *Ingersoll* v. *Coram,* 211 U. S. 335 (29 Sup. Ct. 92: 53 L. Ed. 208), which in effect overrules the decision in *Harris* v. *Root,* 28 Mont. 159 (72 Pac. 429), as sustaining plaintiff's theory. In the principal case referred to the contract stipulating for the payment of a fee in case of a successful termination of the controversy did not provide that a performance of the service by the attorney should have been compensated by a conveyance of real property, and

hence the agreement was not violative of the statute of frauds.

2. An examination of the averments of the complaint in the case at bar will show that the cause of action undertaken to be·stated is founded on the contract to recover the damages resulting from a breach of the agreement. It will be remembered, however, that the pleading referred to states that $4,500, the damage sustained, is the reasonable compensation for the services performed. While this clause is expressed in the form of an averment of fact, it would seem to be nothing more than a conclusion of law that was not predicated on any allegation of the complaint.

3. The rule seems to be well settled that where under a contract, void by the statute of frauds, services have been performed in consideration of a conveyance of land and the execution of a deed to the premises is· refused, the agreement can be abandoned by the party rendering the service who may recover the value of the labor on a *quantum meruit.* 3 Sutherland, Damages (3 ed.) p. 2054; Brown, Statute Frauds (5 ed.) 125; *Mills* v. *Joiner,* 20 Fla. 479; *Clark* v. *Davidson,* 53 Wis. 317 (10 N. W. 384); *Tucker* v. *Grover,* 60 Wis. 240 (19 N. W. 62).

4. The plaintiff, having failed to pursue this remedy, instituted an action for damages which presupposes the enforcement of the contract, and, such being the case, the conclusion of law complained of is deducible from the facts as found, and no error was committed as alleged. It follows that the judgment is affirmed.     AFFIRMED.