## FABIAN v. WASATCH ORCHARD COMPANY.

No. 2372.   Decided July 31, 1912.   Rehearing denied August 16, 1912
(125 Pac. 860).

FRAUDS, STATUTE OF—INVALID CONTRACT—UNJUST ENRICHMENT.—
Where a contract of employment was within the statute of
frauds, and therefore unenforceable, defendant having accepted
the benefit of plaintiff's services for part of the term before
having repudiated the contract, plaintiff was entitled to recover
the reasonable value of the services so rendered and accepted,
and was not required to show defendant's profit or gain as the
result of such services, in order to show unjust enrichment.

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by Ferd. J. Fabian against the Wasatch Orchard Company.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Dickson, Ellis, Ellis & Schulder* for appellant.

*Dey, Hoppaugh & Fabian* and *Stephens, Smith & Porter* for respondent.

STRAUP, J.

The complaint is in two counts.   One that the plaintiff, a merchandise broker, rendered services for the defendant, a Utah corporation engaged in canning and selling fruits and vegetables, in advertising, introducing, and selling its prod-. ucts in Eastern markets, in consideration of which it, by a written agreement, agreed to give the plaintiff the exclusive right for three years to sell, as a broker, all its manufactured products in the State of Utah and in southern Idaho, for which the plaintiff was to have a brokerage of two and

one-half per cent. of the amount of all sales made by him or by others in such territory during such time. In the second count, it is alleged that the plaintiff, at the instance and request of defendant, rendered services for it in advertising, introducing, and selling its products in Eastern markets, and there creating a market for its products, which services were reasonably worth the sum of $6000.

The case was tried to the court, without a jury. The court found: That the defendant had invested a considerable sum of money in growing asparagus for canning purposes, and that the asparagus plants had reached a stage where they would be producing in considerable quantities. That the defendant was heavily in debt and in straightened financial circumstances. That it had a large quantity of such product on hand, but had no market or outlet for it. That it desired to convert the products into cash, regardless of the profit from the sales thereof, and to create a market therefor in Eastern cities, especially in Kansas City, St. Louis, Cincinnati, Chicago, Pittsburgh, Boston, New York, and Philadelphia, and to advertise and introduce its products in such markets. That thereupon the plaintiff, a merchant broker at Salt Lake City, at the solicitation and request of the general manager of the defendant, and for and on its behalf, visited such cities and there advertised the defendant's products, and devoted time and services in introducing them and in creating a market for them, and solicited and obtained orders amounting, at the prices fixed for the products, to the aggregate sum of between $30,000 and $35,000. That the defendant accepted the benefit of such services, and, to the extent of its capacity, filled such orders to the amount of at least $16,000, and that the reasonable value of plaintiff's services was $2300.

The court further found that, in consideration of the services to be rendered, the defendant's general manager orally agreed to give plaintiff for three years the exclusive right to sell the defendant's products in Utah and Southern Idaho, and to give him two and one-half per cent. commission of all sales made in such territory during such time, either by him-

self or others. The oral contract was made about the 18th day of April, 1909. The services rendered by plaintiff, and for which compensation is sought, were rendered by him between that day and the 23d day of May of that year. The contract was reduced to writing in December, 1909, and was signed and delivered in the name of the defendant and by the person purporting to act as its general manager, the same person who made the oral contract with the plaintiff. The court found that the person so acting was the defendant's general manager when the oral contract was made, and that he then had authority to make such a contract, but that when the written contract was made he then was not its general manager, and was not in its employ, he having theretofore left it, and hence found that the written contract was unauthorized, and was not the defendant's contract. The defendant, after the rendition of the services, repudiated the contract, notified the plaintiff to that effect, and refused to ratify, confirm, or approve it, or to be bound by it. The court also found that the oral contract, though made by an authorized agent of the defendant, nevertheless was unenforceable, because by its terms it was not to be performed within one year, and was therefore within the statute of frauds. The court further found that in January, 1910, the defendant discontinued the business of canning fruits and vegetables, and in the spring of that year sold and disposed of its business.

Upon the findings, and in response to the second count of the complaint, the court rendered judgment in favor of the plaintiff for the sum of $2300, the reasonable value of the services rendered by the plaintiff and received and accepted by the defendant. From the judgment, the defendant appeals.

In its brief it states the proposition for consideration to be:

"There is but one question in this case, and that is: Was the defendant enriched in any manner by the part performance of the oral contract, which was within the statute of frauds, and what was the value of that enrichment? In other words, what was the value of the benefits received by

the defendant from the part performance of the oral contract by the plaintiff?"

Both parties agree that the law on the subject is as stated in Browne on Statutes of Frauds (5 Ed.), sec. 118a, that

"the rule that, where one person pays money or performs services for another upon a contract void under the statute of frauds, he may recover the money upon a count for money paid, or recover for the services upon a *quantum meruit*, applies only to cases where the defendant had received and holds the money paid or the benefit of the services rendered; "

and, as stated in 29 Am. & E. Ency. Law (2 Ed.), p. 836, that,

"although part performance by one of the parties to a contract within the statute of frauds will not, at law, entitle such party to recover upon the contract itself, he may nevertheless recover for money paid by him, or property delivered, or services rendered, in accordance with and upon the faith of the contract. The law will raise an implied promise on the part of the other party to pay for what has been done in the way of part performance. But this right to recover is not absolute. The plaintiff is entitled to compensation only under such circumstances as would warrant a recovery in case there was no express contract; and hence it must appear that the defendant has actually received, or will receive, some benefit from the acts of part performance. It is immaterial that the plaintiff may have suffered a loss, because he is unable to enforce the contract."

But the defendant asserts that under the facts found by the court the "benefits" received by the defendant cannot be measured by ascertaining and determining the reasonable value of the services rendered by plaintiff, and accepted and received by the defendant, but by ascertaining and determining whether the services resulted to the defendant's profit or gain, whether it "was enriched" thereby, and, if so, "what was the value of that enrichment?" Hence it urges that the court erred in permitting the plaintiff to prove the reasonable value of the services, and in giving the plaintiff a judgment for the sum of $2300, the found reasonable value thereof, and further assails the judgment for the reason, as contended by it, that the products sold by it in the Eastern markets

on the orders solicited and procured by the plaintiff were sold for less than cost of manufacturing them, and were therefore sold, not to the defendant's profit or gain, but to its loss; and hence the defendant received no "benefit" from the services rendered by the plaintiff and accepted and received by it.

. It is not contended that the services rendered by the plaintiff or the orders obtained by him, were not rendered or obtained in accordance with the contract. No such claim is made. The claim made is that the defendant did not profit, "was not enriched," by the transaction. The defendant's contention leads to this: If A should orally employ B for a period of three years to do the labor in the manufacture of 100,000 brick (assuming such a contract to be within the statute of frauds), and if B, on the faith of and in accordance with the contract, should, within the first nine months, make and produce 20,000, which were received and accepted by A, and A should then repudiate the contract and refuse to longer engage B's services, B could not recover the reasonable value of the services on a *quantum meruit*, but to entitle him to recover it would be essential for him to show that the market value of the brick so made by him and received by A was more than the cost of manufacture; otherwise A received no "benefit" from B's services. Or, if A should orally employ B to work on his farm for a term of three years and agree to give him ten acres of land at the end of that period, and if B, on the faith of the contract, should work nine months on the farm for A in tilling the soil, sowing grain, and reaping crops, and A should then repudiate the contract and refuse to longer engage B's services, again B could not recover the reasonable value of his services; and if it were made to appear that because of drought or a falling market, or other causes not due to his negligence or willfulness, the market price of the products was less than the cost of production, then A received no benefit from B's services, and the latter could not recover from the former.

We think appellant's notion of what is meant by "benefit," as the term is used by text-writers and courts, and applied in

cases of the nature under consideration, is not borne out by the authorities. The texts and cases cited by it do not support its contention. *Dowling v. McKenney,* 124 Mass. 478, is cited. · There A orally agreed to convey land to B, and to take in exchange or payment a monument to be made by B. B finished the monument and tendered it with the money; but A refused to receive the monument, and refused to convey. There A did not receive or accept the monument. He did not receive or accept the fruits of B's services, and hence received no benefit. Had he received and accepted the monument and then repudiated the contract and refused to convey, then, clearly, B would have been entitled to recover the reasonable value of the monument so delivered to and accepted by A. The case in nowise makes against that doctrine, and falls within the rule stated in 20 Cyc. 299 that,

"where services are rendered on an agreement which is void by the statute, an action will lie on the implied promise to pay for such services; but the promise is implied, not from the services alone, but from the benefit to defendant as well, and if defendant has received no benefit, as, for instance, where work has been performed on a chattel which is never delivered, there can be no recovery."

To that effect is also the cited case of *Banker v. Henderson,* 58 N. J. Law, 26, 32 Atl. 700.

We are also referred to *Henrikson v. Henrikson,* 143 Wis. 314, 127 N. W. 963, 33 L. R. A. (N. S.) 534. That was an action to enforce specific performance of an oral contract to convey real estate upon performance by the purchaser and the making of valuable permanent improvements on the land by him. The lower court denied and the appellate court granted specific performance of the contract. The case is not in point, and does not decide anything in support of the appellant here.

*Bristol v. Sutton,* 115 Mich. 365, 73 N. W. 424, is also cited. There a minor was emancipated and left home. Shortly afterwards his uncle agreed to give him $1000 if he would return home and remain with and assist his father on the father's farm until he should attain his majority. The minor carried out the agreement. It was held that, the con-

tract being within the statute of frauds, the approval by the uncle of the minor's conduct was not such a subsequent act as to create an obligation to pay; and that, since the uncle had derived no benefit from the plaintiff's labor, the contract was void. This case also falls within the rule stated in *Dowling v. McKenney, supra,* and in noway supports the defendant's contention.

It is unnecessary to review in detail all the cases cited by appellant. An examination of them will show that they do not support any such doctrine as is contended for by it. We think the well-established rule is that, where one who, not in default, on faith of and in accordance with a contract unenforceable because within the statute of frauds, but not *malum prohibitum* nor *malum in se,* has, in pursuance of the contract, rendered services for the adversary party, who, with knowledge or acquiescence, accepted them and received the benefit of them and repudiated the contract, he may recover on a *quantum meruit* the reasonable value thereof—not the profit or gain resulting to the adversary party by reason of the transaction, nor the loss suffered or sustained by the other, but compensation for the reasonable value of the services rendered by the one and accepted and received by the other. (Page on Contracts, c. 74; *Vickery v. Ritchie,* 202 Mass. 247, 88 N. E. 835, 26 L. R. A. [N. S.] 810; *Stout's Adm'r v. Royston* [Ky.], 107 S. W. 785; *Cozad v. Elam,* 115 Mo. App. 136, 91 S. W. 434; *Appeal of Hull v. Thomas,* 82 Conn. 647, 74 Atl. 925; *Wojahn v. Nat'l Union Bank,* 144 Wis. 646, 129 N. W. 1068; *Jackson v. Stearns,* 58 Ore. 57, 113 Pac. 30; *Patten v. Hicks,* 43 Cal. 509; *Lapham v. Osborne,* 20 Nev. 168, 18 Pac. 881; *Snyder v. Neal,* 129 Mich. 692, 89 N. W. 588.; *Werre v. Thresher Co.* [S. D.], 131 N. W. 721.)

We see nothing in appellant's cases which makes against this. On this theory the case was tried and the judgment rendered. We think it should be affirmed, with costs. It is so ordered.

FRICK, C. J., and McCARTY, J., concur.