## QUIRK v. BANK OF COMMERCE & TRUST CO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1917.)

### No. 2932.

1. CONTRACTS ⬅111—RESTRAINT OF MARRIAGE—CONSTRUCTION.

A promise to remain single, whether during the promisee's or promisor's lifetime, will not be lightly implied, for even such partial restraint of marriage is generally deemed contrary to public policy, if not illegal.

2. WILLS ⬅58(1)—CONTRACTS TO DEVISE—RESTRAINT OF MARRIAGE.

Plaintiff, when a girl of 16, while attending school, met deceased, a man of nearly 50, and he shortly asked permission of her parents to pay her court with a view to marriage. On account of her immaturity and the disparity of ages, plaintiff's parents did not look with favor on-the proposed marriage, but deceased remained devoted to her and upon the most intimate relations with her family. Five years thereafter plaintiff and deceased became engaged, but in deference to her mother's wishes plaintiff refused to then marry deceased. In accordance with deceased's request, plaintiff promised him that so long as he should live she would remain devoted to him, the same as she had been, and in return for and in consideration of the love and affection, service, and loyalty of plaintiff and her family, deceased promised to bequeath and devise to plaintiff the bulk of his fortune. The parties remained engaged, but the marriage was never consummated, although plaintiff and her family cared for de-

ceased in his declining years, when he was afflicted with an incurable disease. *Held*, that the agreement was not one even in partial restraint of marriage, for marriage to another would not have absolutely prevented plaintiff from performance of the obligations assumed by her toward deceased, who did not live in the same place, but merely visited her and her family in the summer, and hence the contract was not subject to attack on the ground that it was illegal, being in restraint of marriage.

3. FRAUDS, STATUTE OF 💬50(1)—CONTRACTS TO BE COMPLETED WITHIN YEAR.

A contract is not invalid, under the statute of frauds, because the contingency on which it is based may not happen within one year, it being possible for it to happen within that time.

4. FRAUDS, STATUTE OF 💬75—CONTRACTS TO DEVISE REALTY.

An oral contract to devise real estate is within the statute of frauds.

5. FRAUDS, STATUTE OF 💬130(2)—CONTRACTS—INVALIDITY.

An oral contract to devise and bequeath property which is indivisible is, under the statute of frauds, entirely unenforceable if it includes an agreement to devise real estate.

6. FRAUDS, STATUTE OF 💬130(2)—CONTRACTS—VALIDITY.

A testator entered into an oral agreement to devise and bequeath the bulk of his estate to plaintiff. About one-half of the estate consisted of realty. *Held* that, under the statute of frauds, the contract was unenforceable, for the testator had the option of giving plaintiff either realty or personalty, and to allow plaintiff to enforce the contract by recovering the personalty would, in effect, compel compliance with that portion of the contract unenforceable because relating to realty.

7. FRAUDS, STATUTE OF 💬129(1)—PART PERFORMANCE.

The doctrine of part performance, which will take a case out of the statute of frauds, is applicable only to equity.

8. FRAUDS, STATUTE OF 💬129(1)—PART PERFORMANCE—APPLICATION OF DOCTRINE.

In an action at law on an oral contract entered into in Wisconsin to devise and bequeath land and personalty, instituted in the federal district court for Tennessee, the doctrine of part performance need not be considered, being applicable only to equitable relief, and not being applicable to the contract under the Tennessee or Wisconsin laws.

9. FRAUDS, STATUTE OF 💬138(4)—ACTIONS—PLEADING—SUFFICIENCY.

One who has given a consideration, and cannot enforce the promise solely because of the statute of frauds, and not because of some inherent illegality in the contract itself, may maintain a quasi contractual action.

10. COURTS 💬333—FEDERAL COURTS—STATE PRACTICE.

The federal courts follow the state practice.

11. WILLS 💬68—CONTRACTS TO DEVISE—ACTION—DECLARATION.

Shannon's Code Tenn. § 4437, abolishes technical forms of action, and allows all contracts to be sued on in the same form of action, while section 4438 declares that all wrongs and injuries to property and person may be redressed by an action on the facts of the case, and section 4439 allows counts in tort and contract to be joined. Plaintiff's declaration alleged that she and deceased entered into an oral contract whereby he was to devise and bequeath to her the bulk of his estate, consisting of land and personalty, and that she fully complied with the contract, but that deceased breached the same. *Held* that, though the declaration relied on the contract, nevertheless it stated a good cause of action on the quasi contract arising out of plaintiff's performance and defendant's breach, the contract being unenforceable under the statute of frauds.

12. PLEADING 💬193(6), 352—ATTACK—MODE OF ATTACK.

Under the Tennessee practice, the error whereby two causes of action are joined in a single count can be taken advantage of only by a motion to strike and not by demurrer.

💬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

13. WILLS ⬤⟿68—CONTRACTS TO DEVISE—ACTIONS—RUNNING OF STATUTE OF LIMITATIONS—QUANTUM MERUIT.

Where deceased breached his oral agreement to devise and bequeath the bulk of his estate, consisting of land and personalty, to plaintiff, plaintiff's right of action on the quantum meruit for services rendered in reliance upon deceased's agreement accrues at the death of deceased, and limitations do not begin to run until that time.

14. EXECUTORS AND ADMINISTRATORS ⬤⟿206(4)—CLAIM FOR SERVICES—QUANTUM MERUIT—MEASURE OF DAMAGES.

Where deceased agreed, in consideration of plaintiff's love, affection, service, and loyalty, to devise and bequeath to her the bulk of his estate, and such agreement was unenforceable because of the statute of frauds, plaintiff's recovery on the quantum meruit is limited to the value of her services, and where, as here, the extent of the services to be rendered is entirely uncertain and dependent upon the length of the promisor's life, evidence as to the value of the bulk of the estate is inadmissible to show the value the parties put on such services, although deceased's financial condition and mode of life should be considered in determining the value of such services.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Mollie Quirk against the Bank of Commerce & Trust Company, executor of the estate of Patrick Kallaher, deceased. There was a judgment for defendant on demurrer to the declaration, and plaintiff brings error. Reversed and remanded, with directions.

G. T. Fitzhugh, of Memphis, Tenn., and Robert N. McMynn, of Milwaukee, Wis., for plaintiff in error.

J. W. Canada, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

MACK, Circuit Judge. The trial court sustained a demurrer to the declaration after refusing leave to plaintiff to amend a second time. The question presented on this writ of error is therefore whether the declaration states a good cause of action.

In substance, plaintiff, a citizen of Wisconsin, charges that Patrick Kallaher failed to fulfill his oral promise to devise to her the bulk of his fortune. The relation of the parties, the promise, and the consideration are set out at length in the allegations, which may be summarized as follows:

In the summer of 1888, Capt. Kallaher met Mollie at Waukesha, Wis., where he was spending the summer. At that time she was a girl of 16, living with her parents at Milwaukee, and attending school at St. Mary's Convent. He was then a man of nearly 50. He called upon her frequently that summer at her home, and they soon became very close and devoted friends. Soon thereafter he asked permission of her parents to pay her court with a view to marriage. On account of her immaturity and the disparity of ages, they did not look with favor upon the proposed marriage. He remained, however, none the less devoted to her, and upon the most intimate relations with her people, spending two to four days of each week of the summer season, which he was wont to spend at or about Waukesha, with Mollie and her family at Milwaukee. Upon these visits, which continued throughout a period of 20 years, he was received by the Quirks with great hospitality and

treated with kindness and affectionate regard, just as if he had been a member of the household.

During this entire period his affections were centered upon Mollie, whom he urged to marry him and whose consent he did obtain in 1893. Their engagement continued, it is alleged, from that time to the death of the testator; but the marriage was postponed on account of the objections of the plaintiff's mother during her life, and out of respect for her wishes thereafter as well as on account of the testator's ill health.

[1, 2] Shortly before the mother's death, and after Mollie had again refused to marry the Captain *at that time,* because her parents would not consent, the Captain asked her to promise him that so long as he should live she would remain devoted to him the same as she had been, and he told her that if she would so promise, that in return for and in consideration of the love and affection, service, and loyalty of herself and her family, given and to be given to him, he would bequeath and devise to her the bulk of his fortune; that thereupon she gave him her promise to that effect; that he thereupon entered into a contract with her that he would leave her the bulk of his fortune after his death in consideration of the life of service and loyalty and affection which had been and was to be devoted to him by her as long as he lived.

She averred that this contract was in no manner abrogated or impaired, but remained in full force and effect down to the date of his death, and that she had fully performed her part of the contract; that down to his death, in addition to the loyalty and affection and service of the plaintiff, he through all the years enjoyed the advantage and comfort of the home of plaintiff's family, which he always said was the only real home that he had ever had; that during his various visits and sojourns in the home of plaintiff's family, she and other members of her family waited upon him and rendered him such services of affection as would be given by daughters to members of their own household, and in later years such services became more and more difficult and unpleasant to perform; that for several years prior to his death he was afflicted with an incurable disease; that during all such time she and her sister waited on him, and affectionately and faithfully performed nursing services, regardless of the unpleasant nature thereof. Other services and acts of kindness, affection, and loyalty upon the part of Mollie and her family toward the comfort and well-being of the testator followed in full accord with the terms and spirit of their agreement. He was not only received most hospitably at the Quirk residence, but at his request Mollie remained with him at the hospital at Baltimore, and stayed with and comforted him during his last illness at Memphis, and at her home in Milwaukee, where he asked to be brought. He gave her $25,000 in bonds in June, 1910, and another $15,000 in June, 1912, telling her that this was only a gift at the time and not all that she was to get.

Defendant contends most strenuously that this agreement was one in restraint of marriage; that as such it was void and against public policy; and that therefore no action lies either for its breach or in quantum meruit for the consideration given by plaintiff.

It will be observed, however, that plaintiff specifically charges that the engagement to marry continued unbroken until the Captain's death,

and that the contract in question was made after she had refused to marry him at a specific time—a time when parental consent could not be obtained. It is not alleged that Kallaher either requested her or that Mollie promised not to marry another. The continued engagement implied, of course, a promise not to marry another while the engagement lasted; but this engagement, combined with the declination to marry the Captain at that particular time, cannot convert the promise to be as devoted and loyal to him as she had been into a promise to remain single. Clearly, the promise means either that the engagement shall continue with the implication that marriage will follow at some convenient time, and that the same affection theretofore given shall continue to be given, or it means that, even if her then refusal to marry shall persist, whether because of filial duty or after the parents' death in filial devotion to their wishes, or for any other reason, that she will nevertheless give him devotion and loyalty. A promise to remain single, whether during the promisee's or the promisor's lifetime, will not lightly be implied; for even such partial restraint of marriage is generally deemed contrary to public policy even if not illegal. And inasmuch as marriage to another would not absolutely prevent performance of the obligations thus assumed by her toward a man who did not live in the same place, but merely visited her and her family in the summer, it cannot fairly be deemed to have been contemplated by the parties that she should devote herself exclusively to him. We are unable to find any implied obligation that Mollie should not marry another; such care and devotion as a loving child would render would seem to cover the obligation, fairly construed. The contract, therefore, was not in restraint of marriage, either general or partial.

[3-6] The contract, however, was oral; and it is contended that it is unenforceable because of the statute of frauds. A contract, however, that on a contingency contemplated by the parties may be completed within one year is not subject to the statute because the contingency may not happen within that time. Heath v. Heath, 31 Wis. 223; Chase v. Hinkley, 126 Wis. 75, 79, 105 N. W. 230, 2 L. R. A. (N. S.) 738, 110 Am. St. Rep. 896, 5 Ann. Cas. 328; Deaton v. Tennessee Coal & R. R. Co., 12 Heisk. (Tenn.) 650, 654.

But an oral contract to devise real estate is within the statute, and an indivisible obligation is entirely unenforceable, if the grant of real estate forms a part thereof. In re Sheldon's Estate, 120 Wis. 26, 97 N. W. 524; Goodloe v. Goodloe, 116 Tenn. 252, 92 S. W. 767, 6 L. R. A. (N. S.) 703, 8 Ann. Cas. 112; Horton v. Stegmyer, 175 Fed. 756, 99 C. C. A. 332, 20 Ann. Cas. 1134; Browne, Statute of Frauds, §§ 140–142. We need not consider whether the promisee who has performed his obligation in full may waive performance of so much of the counter obligation as relates to real estate and enforce only that part which relates to personal property; if this were an agreement to devise all of the property, it would be necessary to determine this as between the conflicting authorities. Here, however, the bulk is to be given; not the bulk of realty and the bulk of personalty, but the bulk of the entire estate. Thereunder the testator might have devised only his realty; his was the option. A waiver of the right to the realty and recovery of the personalty alone would not be in accordance with the contract; it would

involve the substitution by the court of a new contract for the one made by the parties. Moreover, in this case, the declaration alleges that of an estate in excess of $600,000 not less than $250,000 was personalty. The bulk of the property, therefore, not only might include realty, but might consist only of realty. And when the promisor has the option of giving realty or personalty, his promise is wholly unenforceable because the enforcement of one of the alternatives would be but a wedge to secure the enforcement of the other. Howard v. Brower, 37 Ohio St. 402; Wolfskill v. Wells, 154 Mo. App. 302, 134 S. W. 51; Andrews v. Broughton, 78 Mo. App. 179; Patterson v. Cunningham, 12 Me. 506; Mather v. Scoles, 35 Ind. 1; contra, Mercier v. Campbell, 14 Ont. L. R. 639, criticised in 46 Canadian Law Journal, 273, and 26 Law Quarterly Review, 194; and see Browne, Statute of Frauds, § 152.

[7, 8] Inasmuch as the doctrine of part performance relates only to relief in equity (Browne, Statute of Frauds, sec. 451), and moreover does not prevail in Tennessee (Goodloe v. Goodloe, supra; Patton v. McClure, Mart. & Y. 333), and is inapplicable to the contract in question under Wisconsin law (Rodman v. Rodman, 112 Wis. 378, 88 N. W. 218), we need not consider its limitations.

[9-12] But one who has given a consideration, and who cannot enforce the promise solely because of the statute of frauds, and not because of some inherent illegality in the contract itself, is no longer remediless; a quasi contractual action is maintainable. Browne, Statute of Frauds, § 118. Whether a count on the contract and one in quantum meruit may be joined, and whether a single count setting forth the entire transaction and seeking whatever recovery may be possible thereunder is proper, are questions of local procedure; the federal courts follow the state practice. Under the Tennessee Code, technical forms of action are abolished; all contracts may be sued on in the same form of action (section 4437); all wrongs and injuries to property and person may be redressed by an action on the facts of the case (section 4438); and a simple statement of the facts suffices, if these facts entitle a plaintiff to recover in any form (Hall v. Memphis Co. [C. C.] 155 Fed. 57). Counts in tort and contract may be joined. Section 4439. And if a single count for the combined cause of action be formally defective, advantage could be taken thereof only by a motion to strike, not by a demurrer. Waggoner v. White, 11 Heisk. (Tenn.) 741. In this case all the facts necessary to constitute a good cause of action on a quantum meruit are set forth; the plaintiff's conclusion as to the theory on which she is entitled to redress alone is erroneous. While under common-law pleading there can be no recovery in quantum meruit under a count for breach of contract (Jackson v. Stearns, 58 Or. 57, 113 Pac. 30, 37 L. R. A. [N. S.] 639, Ann. Cas. 1913A, 284, and cases cited in note), under the Tennessee Code this declaration on the facts is good against demurrer. See Hall v. Memphis Co., supra; Knoxville Traction Co. v. Lane, 103 Tenn. 376, 53 S. W. 557, 46 L. R. A. 549. See, too, Graham v. Graham, 134 App. Div. 777, 119 N. Y. Supp. 1013.

[13] The statute of limitations begins to run against such a claim for services, based upon a quantum meruit, not as the services are ren-

dered, but at the death of the promisor, when the obligation matures. Goodloe v. Goodloe, supra; In re Kessler's Estate, 87 Wis. 660, 59 N. W. 129, 41 Am. St. Rep. 74. Moreover, in the present case, the services continued until his death.

[14] Although the evidence as to the oral agreement is admissible to prove that the plaintiff's services were not given gratuitously, without expectation of reward, the promised reward affords no real measure of the plaintiff's quasi contractual recovery either in Tennessee or Wisconsin. Goodloe v. Goodloe, supra; In re Sheldon's Estate, 120 Wis. 26, 97 N. W. 524. The plaintiff's right must be measured by the reasonable value of the consideration given by her to him. If the services to be rendered had been definitely fixed in amount when the contract was made, the testimony as to the value of the bulk of the estate would be admissible to show the value that the parties placed on the services that were to be given; but where, as here, the extent of the services to be rendered is entirely uncertain and dependent upon the length of the promisor's life, such evidence is of no probative force in ascertaining their reasonable value. Woodward, Quasi Contracts, §§ 104–106, with citation of cases pro and con. Captain Kallaher's manner of living and financial condition at the time the services were rendered may, however, be considered in this connection; for the reasonable value placed by the parties on such highly personal services as this plaintiff performed for the Captain would be largely affected by his financial and social position and the circumstances under which they were given.

The judgment must be reversed, and the cause remanded, with directions to overrule the demurrer.