Argued April 16, decided May 13, modified on rehearing June 24, 1913. Further rehearing denied July 15, 1913.

Motion to Correct Mandate allowed September 23, 1913.

# STUART *v.* UNIVERSITY LUMBER CO.

(132 Pac. 1: 132 Pac. 1164; 135 Pac. 165.)

**Sales—Title—Encumbrances.**

1. A buyer of ties was entitled to have them delivered to him free from encumbrances, and it was not sufficient for the seller to say that the mortgagees would not urge their liens, that the liens were not enforceable because of defects therein, or that the mortgagees were bound by a secret agreement avoiding the lien, since the buyer was not required to take them subject to litigation with the mortgagees.

**Sales—Liens—Loss by Delivery.**

2. Where a mortgage lien on ties was owned by the seller, as assignee, at the time the buyer refused them on account of liens, a delivery by the assignee would have merged his lien in the title so delivered, or at least would have entitled the buyer to a receipt against him.

**Sales—Liens—Undelivered Trust Deed.**

3. A deed by the seller of ties to a trustee for the benefit of the seller's creditors which had not been delivered created no lien on the ties and might have been canceled at any time, and hence did not constitute a defect in title.

**Sales—Title—Liens.**

4. Defendant contracted for certain ties, to be delivered by plaintiff's assignor, and it was agreed that an amount due to a holder of a bill of sale of the undelivered ties might be paid to the holder out of the price of the ties. Another lien on the undelivered ties authorized their delivery to the buyer and the proceeds applied to a discharge of the lien according to an agreement between the mortgagor and the mortgagee. There was no controversy between the lienholders and the seller or his assignee. *Held,* that, as such liens were not in fact in the way of the buyer's receipt of the ties free from such liens, their existence was not a defect in title.

**Frauds, Statute of—Sale of Goods—Railroad Ties.**

5. A sale of railroad ties, the entire cut of the seller's mill for six months, was not a contract required by the statute of frauds to be in writing.

**Evidence—Parol Evidence to Vary Writing—Part not Covered by Writing.**

6. Under Section 713, L. O. L., providing that contracts reduced to writing cannot be varied by parol evidence of their terms, parol evidence is admissible to prove the terms and conditions of a part of an agreement not included in the writing.

**Sales—Excuse for Default by Seller—Acts of Buyer.**

7. Where a seller of ties was to deliver them at ship's tackle, the buyer would have no excuse for a two years' delay in furnishing vessels, and if none were furnished the seller complied with his contract when he delivered the ties available to a vessel at the place of delivery.

**Appeal and Error—Party Entitled to Allege Error—Theory of Case.**

8. Where the complaint, in an action for railroad ties sold to defendant, did not state whether the action was for the purchase price or for damages for breach of the contract, and where the facts were proved as averred, and the case was tried on the theory that the action was for damages, and the judgment was based upon the facts so far as proved, defendant, who had raised no question before trial to the form of the complaint or to the relief sought, was not prejudiced thereby.

**Sales—Rescission by Buyer—Operation and Effect.**

9. Where a buyer of ties refused to accept them on the ground of encumbrances on them, he had no further interest in them, and the seller could hold them or sell them.

**Appeal and Error—Modification of Judgment—Reducing Amount of Recovery.**

10. In an action to recover for railroad ties sold to the defendant, where the only evidence as to the number of ties shows that the number was less than that for which recovery was allowed by the trial court, the judgment will be modified to permit a recovery only for the correct number.

**Appeal and Error—Mandate—Restitution.**

11. Where the plaintiff, in an action pending on appeal by the defendant, gave an undertaking as provided in Section 553, L. O. L., for the enforcement of the judgment notwithstanding the appeal, and the defendant thereupon satisfied the judgment, which was later reduced by the Supreme Court, the mandate should require the satisfaction of the judgment against the defendant, and a judgment against the plaintiff and his sureties for the restitution of the amount by which the judgment was reduced.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action by J. C. Stuart against the University Lumber & Shingle Company, a corporation, to recover the contract price of certain railroad ties.

On the 29th of March, 1907, defendant contracted with the Woodland Lumber Company to purchase all the ties cut by it at its mill on the North Fork of Lewis River, in Clarke County, Washington, during the period of six months from that date; the contract being an offer and acceptance in the following words:

"Portland, Oregon, March 29, 1907.
"Woodland Lumber Company, Portland, Oregon:

"Ship to us at Stella, Washington, for which we agree to pay as hereinafter stated, the entire cut of mill located on the North Fork of Lewis River, in Clarke County, Washington, for six months from date, said cut to be 6x8x8 and 7x8x8 ties as ordered, not more than 20 per cent to be No. 2; said ties to be paid for at the rate of $12.50 per thousand feet delivered at ship's tackle at Stella, Washington. Settlement made as fast as tallied and loaded. Terms cash less

2 per cent.  Kindly advise us how soon we may expect shipment to come forward.

"Yours respectfully,
"UNIVERSITY LUMBER & SHINGLE COMPANY.
"Per WILLIAM LAUGHLIN,
"Manager Lumber Department.
"Countersigned and accepted.
"WOODLAND LUMBER COMPANY,
"Per E. M. SIMONTON,
"Pres.
"ED. W. MUELLER,
"Sec."

The Woodland Lumber Company cut about 51,179 ties during that period.  Of that amount the defendant received and paid for 37,472 ties, when the market value of the ties declined and the defendant delayed accepting the remainder of them under promise to receive them later, until on about May 10, 1909, at which time it refused to receive any more ties.  It was found by the Circuit Court that defendant had purchased ties from other mill companies on Lewis River, to be delivered at the same place, and that by agreement with the defendant said ties might be branded, mingled and rafted down Lewis and Columbia Rivers to Stella. Defendant did not receive and ship the ties as fast as delivered, and when the booms were all full at Stella, it directed the Woodland Lumber Company to hold the ties in Lake and Lewis Rivers.  While the ties were held at the place of delivery by defendant's direction, they were greatly depreciated in value by being in the water.  The Woodland Lumber Company was compelled to and did sell the 13,799 ties so remaining at the said place of delivery, at the market price thereof, namely, $2,024.76 over and above the expense of selling.

The answer admits the receipt of 37,742 ties and payment therefor, and affirmatively alleges that the Wood-

land Lumber Company had mortgaged the undelivered ties to Amanda Dietz for the sum of $3,500; to R. L. Sabin for the benefit of the creditors of the Woodland Lumber Company; to the Title Guarantee & Trust Company for the sum of $2,000; to the Merchants' Savings & Trust Company for $7,500; and to the Woodland State Bank for $5,000. Said mortgages were in force and unsatisfied on May 10, 1909, when defendant refused to accept the ties because of said liens, because of plaintiff's inability to deliver the same free therefrom, and because the ties were commingled with ties belonging to other persons. On January 10, 1909, the Woodland Lumber Company sold and assigned its right, title and interest in its contract with defendant to the plaintiff. including the right to sue for the enforcement thereof. After hearing the evidence, the court made findings of fact, from which it is concluded that plaintiff is entitled to judgment against the defendant for the sum of $3,218.86. From a judgment thereon the defendant appeals.

AFFIRMED. MODIFIED ON REHEARING.

For appellant there was a brief over the names of *Mr. Martin L. Pipes, Mr. George S. Sheperd, Mr. John M. Pipes* and *Mr. George A. Pipes,* with oral arguments by *Mr. Martin L. Pipes* and *Mr. Shepherd.*

For respondent there was a brief over the names of *Chamberlain, Thomas & Kraemer, Mr. Lester W. Humphreys* and *Mr. Walter S. Hufford,* with an oral argument by *Mr. Warren E. Thomas.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The first and principal defense is that the ties were subject to liens on May 10, 1909, and that a clear title could not have been delivered by plaintiff nor by the Woodland Lumber Company It may be conceded

that plaintiff must be able to transfer the ties to the defendant free from encumbrance. It is not sufficient for the plaintiff to say that the mortgagees will not urge their liens, that the liens are not enforceable by reason of defects therein, nor that the mortgagees are bound by some secret agreement that will avoid the lien. Defendant is not required to take the property subject to possible litigation with the mortgagees. It does not make any difference whether the chattel mortgages were valid under the Washington statute; they had the semblance of mortgages and were clouds upon the title to the ties, which defendant does not have to contest.

2. As to the *status* of these mortgages the evidence discloses that the Title Guarantee & Trust Company's mortgage had been assigned to and was owned by plaintiff at the time defendant refused the ties and the delivery of the ties by him would have merged plaintiff's lien in the title so delivered, or at least the defendant could have required a receipt against it. The mortgage of the Merchants' Savings & Trust Company had been paid at that time.

3. The trust deed to R. L. Sabin had not been delivered, and therefore it created no lien, and could have been canceled at any time.

4. The Dietz bill of sale was owned by Meier & Frank Company, of Portland, and the amount due could have been paid to it by the defendant out of the price of the ties, as authorized by the letter from the Woodland Lumber Company, of May 4, 1909. The mortgage to the Woodland State Bank especially authorizes the delivery of the ties to the defendant in the following language: "It being understood that these ties have been contracted to be sold to the University Lumber & Shingle Company, of Portland, Oregon, and that the mortgagor will give the mortgagee

an order on said company for the proceeds of the same, as they arrive at the mill, and which shall be applied in payment of this mortgage debt until the same shall be satisfied.'' Plaintiff, in tendering the ties, was not demanding the money as against these liens. There was no controversy between the lienholders and the plaintiff or the Woodland Lumber Company, so that in fact these liens were not in the way of defendant receiving the ties free from the liens. In the case of *Irvin* v. *Bleakley,* 67 Pa. 29, a suit by the vendee to rescind a contract of purchase of real estate, one of the grounds upon which the plaintiff bases his right to rescind was that there were several judgment liens against the property. The court held that, as there was sufficient of the purchase money in plaintiff's hands to satisfy the judgment three times over, this was no ground for rescission. They had the means in their own hands to pay the judgments if defendant would not satisfy them. In *Moore* v. *Shelly,* 2 Watts (Pa.), 256, it is held that, if the encumbrances are such that the vendor can remove them at the time the deed is to be delivered, they are no obstacle to the enforcement of the contract; but, if the conveyances are such that the vendor cannot procure their cancellation, such as a lease that does not expire or mortgage that does not mature until after the time the deed is to be delivered, the vendor may rescind. In *Hampton* v. *Speckenagle,* 9 Serg. & R. (Pa.) 221 (11 Am. Dec. 704), where the vendor sued the vendee for the balance of the purchase price of real estate, the vendee contending that he was not bound to take the land because there were encumbrances on it not mentioned at the time of the sale, it was held that, before the plaintiff would be entitled to recover damages, it was incumbent upon him to show that it was in his power to make a good title, and if the encumbrances were of

such a nature that he could and would have removed them had the defendant been willing to accept the conveyance the plaintiff might recover. In this case the defendant could have received the ties and held a sufficient part of the price to satisfy the liens, or could have paid the liens off, as that was the wish and intention of plaintiff and the Woodland Lumber Company. Therefore it is evident that the repudiation of the contract was for some other reason than that the plaintiff could not have given a good title. About May 10, 1909, two years after the making of the contract, during which time the ties were left in the boom by defendant's direction, defendant repudiated the contract and refused to receive the ties although already delivered according to contract or defendant's subsequent direction. Defendant's only objection to receiving them is contained in its letter of May 10, 1909, which is as follows:

"Your letter of May 4, 1909, has been received. In answer thereto will say that you have never called our attention to any ties which you say were delivered to us by your company something over a year and a half ago. We will also say that you have never had the ties in question ready to be delivered at Stella, but that they always have been and at this time are jumbled in a raft with other ties belonging to other people, and are not in any shape to be delivered and cannot be separated from other people's ties. The ties you mention were not at our risk on the day you say they were delivered at Stella, Washington, nor at any other time. We note the statement made in your letter that the ties in question have been mortgaged to the Title Guarantee & Trust Company, and that this mortgage has been assigned to different persons. We will further say that we will not be obliged to receive ties covered by a mortgage. We respectfully decline to pay you for the ties you mention. We have already sent to the

Woodland State Bank, by your instructions, our check for the balance due for all the ties delivered by you to us.                    Respectfully yours,
"UNIVERSITY LUMBER & SHINGLE COMPANY."

As to the first objection that the ties are jumbled in a raft with ties belonging to other people and cannot be delivered separate from these owned by other persons, the trial court finds that it was by agreement between the Woodland Lumber Company and the defendant that the ties were to be floated and mingled with the ties of other mills, and it appears that most of the ties received were so delivered, so that neither of the objections made are meritorious.

There are many assignments of error, but all need not be noticed, as they are practically covered by the points here decided.

5, 6. The objection to finding No. 6 is that it is based on parol evidence of the contract as to the manner of the delivery of the ties, namely, that they should be mingled with other ties. This is not a contract that is required by the statute of frauds to be in writing; but, when reduced to writing, parol evidence cannot be received to vary the terms of the agreement: Section 713, L. O. L. But the writing is incomplete; it makes no provisions as to the manner of delivery, and it was competent to show that the manner of delivery was agreed upon, that is, by floating and commingling the logs. This was the principal question involved in the case of *American Contract Co.* v. *Bullen Bridge Co.,* 29 Or. 549 (46 Pac. 138), where Mr. Chief Justice MOORE says: "If the writings constitute a part only of the oral agreement entered into between the parties, parol evidence was admissible to prove the terms and conditions of that part of the agreement not embraced within or in conflict with the offer and its acceptance." See *Luckey* v. *Lincoln County,* 42 Or. 331 (70 Pac. 509),

which also answers the objection to findings Nos. 5 and 8, namely, that the defendant was to furnish sufficient ships to receive the ties, which was not mentioned in the writing, but was an element of the delivery.

7. If the Woodland Lumber Company was to deliver the ties at ship's tackle, it was necessary that there be a ship to receive the ties; but probably, if no ships were provided, the Woodland Lumber Company complied with its contract when the ties were delivered where they were available to a ship if one were at the place of delivery, so that, even if the finding were not justified, yet defendant was not prejudiced.  There can be no excuse for two years' delay in procuring ships.  The Woodland Lumber Company had not been hasty in demanding a receipt of the ties.

8. The question is raised by the brief that the complaint is for the purchase price of the ties and not for damages for breach of contract.  The finding by the court was for the purchase price less the amount received by plaintiff for the ties left in plaintiff's possession.  But two defenses are raised by the answer: (1) That the ties were encumbered by chattel mortgages; and (2) that they were commingled with other ties and were not capable of delivery free from the liens.  The plaintiff in his complaint does not state whether it is for the contract price of the ties or for damages for breach of the contract.  The complaint avers the facts as they were proved, except that the figures in the complaint are inaccurate.  Subdivision 14 of it sets out the figures in detail as disclosed by the former allegations, setting forth the number of ties tendered and giving credit for the number refused by defendants at their market value.  No question was raised to the form of the complaint nor to the relief sought until after the trial.  Plaintiff in his brief says

the action is for damages. The case seems to have been tried on that theory, and the complaint is sufficient to sustain it, the defendant not being prejudiced thereby. The judgment was based upon the facts alleged as far as proved. The court found that the price at which the ties were sold by plaintiff was their market value, and gave judgment for the difference between the contract price and the market value at the time the defendant repudiated the contract.

9. When the defendant refused to receive the ties, it had no further interest in them, and plaintiff could hold them or sell them as he pleased. It was only a question of their market value at the time of such refusal by defendant; but no specific issue had been made by the pleadings or at the trial on these questions.

The other assignments of error suggested could not affect the result of the case.

We find no prejudicial error. The judgment is affirmed.                                   AFFIRMED.

---

Decided June 24, 1913.

ON PETITION FOR REHEARING.

(132 Pac. 1164.)

MR. JUSTICE EAKIN delivered the opinion of the court on rehearing.

On the suggestion of defendant by his petition for rehearing we have re-examined the plaintiff's Exhibits C, F and F2 as to the number of ties cut by plaintiff. This is the only evidence upon that issue from which it appears that the whole number of ties cut was 49,731, from which should be deducted 467 culls, shown by plaintiff's Exhibit G, leaving 49,264 ties instead of 51,271 as found by the trial court. Therefore the

amount due plaintiff is $2,459.59, and the former opinion should conform to this.

The judgment of the Circuit Court is modified accordingly.

MODIFIED ON REHEARING.

---

Decided September 23, 1913.

ON MOTION TO CORRECT MANDATE.

(135 Pac. 165.)

MR. JUSTICE EAKIN delivered the opinion to correct mandate.

After the decision of this case and the issuance of the mandate, defendant appeared by petition and asked the court to recall and modify the mandate. It appears that after the perfecting of the appeal that plaintiff filed an undertaking, under Section 553, L. O. L., for the enforcement of the judgment notwithstanding the appeal, conditioned that, if the judgment be reversed or modified, plaintiff would make such restitution as the appellate court might direct. It further appears that on the 17th day of November, 1911, in reliance upon said undertaking and to prevent the levy of execution, defendant paid to plaintiff the amount of the judgment, $3,218.86, with interest and costs, total $3,385.18 and that this court has modified the judgment appealed from by reducing it to the sum of $2,459.59. Therefore the judgment against the defendant should be satisfied in full and canceled, and defendant should have judgment of restitution against the plaintiff and the surety on his undertaking for the enforcement of the judgment notwithstanding the appeal, in the sum of $759.27, with interest thereon from June 23, 1911.

The mandate is modified to conform herewith.

MANDATE MODIFIED ON MOTION.