Argued December 14, 1916, affirmed January 16, 1917.

# SNOW v. BEARD.*

(162 Pac. 258.)

**Attorney and Client—Right of Client to Compromise Suit.**

1. The client has a right to compromise a suit or action without the knowledge or consent of his attorney, and even against his protest.

  [As to right to compensation of attorney who has taken claim to collect on percentage where client takes claim out of his hands, see note in Ann. Cas. 1912C, 741.]

**Attorney and Client—Compensation—Effect of Compromise.**

2. Compromise by a client of a case does not affect his attorneys' right to stipulated and earned compensation, in the absence of agreement reducing such compensation.

**Attorney and Client—Action for Compensation—Directed Verdict.**

3. In action for attorneys' compensation, *held* not error to deny defendants' motion for directed verdict.

**Evidence—Written Contract—Parol Evidence.**

4. In action by attorneys for compensation under a written agreement, it was proper to exclude testimony relating to the amount of the fee, when it was payable, and from what sources the money was to be derived, as to which items the agreement was complete in itself.

**Attorney and Client—Attorneys' Lien—Property Subject.**

5. Where attorneys collected on a judgment $300 of costs which had been advanced by their clients to pay expenses in preparing for the trial of causes, a lien for their professional services attached thereto, since the object for which the money was advanced had been accomplished, and the costs thus having come into the attorneys' possession in the course of their employment made the sum so received equivalent to a general deposit.

Evidence—Opinion Evidence—Conclusion of Witness.

6. In action by attorney for agreed compensation, a defense being that the attorney had refused to go on with the employment at one time, which defense was answered by showing that the attorney did later in fact go on with the trial, testimony of defendant that the attorney's refusal to proceed with the case was final was mere conjecture amounting to a conclusion, which could properly be stricken out.

Attorney and Client—Action for Compensation—Evidence.

7. In such action it was proper to exclude defendant's answer to a question designed to elicit that he has secured other counsel because of plaintiffs' hostile conduct and attitude, where there was no evidence offered by defendants tending to show they were embarrassed or hindered by any act of plaintiffs, or that they lost any rights to a fair trial, since the mental attitude of a witness or his opinion as to hypothetical statement of facts could not be material.

Attorney and Client—Action for Compensation—Instruction—"Litigate."

8. In action by attorneys for compensation, an instruction that the written contract did not fully set forth what the services were to be, that being for the jury to determine, etc., was not erroneous as directing the jury to consider no services performed by plaintiffs except such as were rendered in litigating causes for their clients; the word "litigate" used in the complaint limiting the service alleged to have been engaged to testing or trying for the clients the validity of disputed claims by suits, actions, or proceedings in courts of law or equity.

Appeal and Error—Harmless Error—Instructions.

9. In action by attorneys for compensation, where it appeared the attorneys did work not contemplated by the terms of their contract, but made no extra charge therefor, and defendant made no counterclaim for damages from plaintiffs' failure to perform their contract, an instruction that, if plaintiffs conducted all the "litigation" which was conducted for the desired end, they were entitled to recover, was not prejudicial to defendants.

Attorney and Client—Action—Instructions.

10. In action by attorneys for services, an instruction authorizing recovery if plaintiffs had completed their part of the contract up to the time of settlement by their clients *held* proper.

Trial—Instructions—Construction—Reference to Other Instructions.

11. An instruction which conveys a proper meaning when read with other instructions given is not error.

Attorney and Client—Action for Compensation—Instructions.

12. In action by attorneys for services, an instruction that the attorneys could not be deprived of their rights to the stipulated fee for services by the clients' settling the case was not error, where there was no allegation in the answer of damages from refusal of plaintiffs to proceed with litigation, and thereby compelling settlement.

---

*On dismissal of suit to defeat attorney's lien or claim to compensation, see note in 5 L. R. A. (N. S.) 390.          REPORTER.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This is an action by Zera Snow and Wallace Mc-
Camant, partners engaged in the practice of law as
Snow & McCamant, against S. Roscoe Beard and Mary
B. Gray to recover money.   The cause, being at issue,
resulted in a verdict and judgment for the plaintiffs in
the sum demanded, $2,895.70, with interest from April
20, 1914, at the rate of 6 per cent per annum, and the
defendants appeal.                           AFFIRMED.

For appellants there was a brief over the names of
*Mr. Julius N. Hart* and *Messrs. Smith & Smith,* with
an oral argument by *Mr. Hart.*

For respondents there was a brief over the names of
*Mr. Charles W. Fulton* and *Mr. MacCormac Snow,*
with an oral argument by *Mr. Fulton.*

MR. JUSTICE MOORE delivered the opinion of the
court.

It is maintained by defendants' counsel that an
error was committed in denying their request for a
directed verdict in their favor, interposed when the
case was submitted, on the ground that the plaintiffs
violated the terms of the contract sued upon, and for
that reason they were not entitled to any compensa-
tion for the services which they performed.   It ap-
pears from a transcript of the evidence that the
defendants' uncle, S. M. Beard, died testate in Mult-
nomah County, Oregon, January 10, 1910, having de-
vised and bequeathed all his property equally to them,
their mother, Elizabeth Beard, their brother, A. Edgar
Beard, and their sister, Carrie E. Cadwell, subject,

however, to special legacies amounting to $1,700 and
the expenses of administration. The will designated
as executrix Mary B. Gray and as executors A. Edgar
Beard and S. Roscoe Beard, who for brevity will here-
after in this opinion be indicated by their middle
names respectively. The will was probated in that
county, and soon thereafter a controversy arose
respecting property formerly owned by the testator, a
part of which stood in the name of Edgar, and the
legal title to other portions was held by the Beard
Fruit Company, a corporation of the State of Wash-
ington. The defendants asserted that the testator
died seised and possessed of all such property, while
Edgar maintained he was the owner of the part which
stood in his name; that the Beard Fruit Company was
the equitable owner of the portion which it held; and
that he was the owner of half the stock of that cor-
poration. In order to have such conflicting rights
judicially determined the plaintiffs were employed in
September, 1910, by the defendants to litigate their
claims to the property last mentioned. Pursuant to
such engagement, and on behalf of their clients, the
plaintiffs instituted suits, actions and proceedings in
their names as follows: In November, 1910, the County
Court of Multnomah County ordered Edgar to deliver
all papers in his possession belonging to the decedent's
estate to Roscoe. No attention was paid to this com-
mand, and Edgar was cited to appear for contempt
of court, whereupon he complied with the order and
was discharged. A *mandamus* proceeding was insti-
tuted against Edgar to compel him to permit the de-
fendants and their counsel to inspect the corporation's
books and papers and to make copies thereof. In the
spring of 1911 proceedings were instituted to remove
Edgar as executor. He also commenced like proceed-

ings to have the defendants removed from their trust. Contempt proceedings were brought against Edgar to compel him to file a report showing what he had done as executor. In the summer of 1911 an action was commenced against Edgar to recover the possession of ten shares of the capital stock of the corporation. In order to prepare for the trial of that cause his deposition was taken by the plaintiffs to be used as evidence. Upon the recovery of such stock trustees of the corporation were elected, who adopted a resolution declaring the Beard Fruit Company at the time of the testator's death held certain real property in trust for him and of which the residuary legatees were the equitable owners. Much of the decedent's property was in Clarke County, Washington, where was appointed an administrator of his estate who was not in sympathy with the defendants. An action was commenced in that county against the corporation and a tenant to recover possession of 46 acres of land alleged to have been owned by Mrs. Gray. A suit in equity resulted in which Edgar alleged that the corporation was the owner of the real property. The judge of the Superior Court of that county had been counsel for Edgar, and by reason thereof the causes were tried by the judge of the Superior Court of Cowlitz County, Washington, and it was decreed that Mrs. Gray was the owner of an undivided half of the land and that the corporation owned the other moiety. This is the only case that was finally determined in which the plaintiffs did not obtain for the defendants the entire relief demanded. Edgar placed a mortgage of $5,000 upon 41 acres of land in Multnomah County, the legal title to which it was alleged by the defendants herein be held in trust for the estate. A suit was instituted to cancel that lien, and it having subse-

quently been ascertained that no consideration for the mortgage existed, the suit was dismissed upon stipulation that the lien should be discharged. A suit was also commenced to secure for Mrs. Gray and Roscoe an undivided two fifths of that land, and one was instituted at Vancouver, Washington, by their mother, Elizabeth Beard, to determine the rights of the residuary legatees to the decedent's property in that state. This cause was set for trial in April, 1913, but was then continued. Of the causes tried in the Circuit Court of the State of Oregon for Multnomah County the plaintiffs on July 15, 1913, secured in this court final determinations in their favor in the case of *Gray* v. *Beard,* 66 Or. 59 (133 Pac. 791), where it was ruled that Edgar held the legal title to land in that county in trust for his uncle's estate, and that the defendants herein were entitled to an undivided two fifths of that real property. So, too, in *Beard* v. *Beard,* 66 Or. 512 (133 Pac. 797, 134 Pac. 1196), it was held that *mandamus* would lie to compel Edgar, who resided in that county, to deliver to Roscoe, as secretary of the Beard Fruit Company, books and papers of that corporation, whose domicile was in another state. Also in *Beard* v. *Beard,* 66 Or. 526 (133 Pac. 795), it was decided that Roscoe, as executor, was entitled to the possession of ten shares of the capital stock of the corporation, which definite portions were held by Edgar.

The plaintiffs, having obtained these favorable decisions, concluded it was proper to bring about, if possible, a settlement of the remaining controverted questions. For that purpose Mr. McCamant conferred with E. B. Seabrook, an attorney for the adverse party, to whom was submitted tentative terms upon which it was believed a compromise could be effected. The latter having consented to co-operate in an attempt

to reconcile the existing controversies, McCamant called upon Mrs. Gray, who approved the scheme. He on July 22, 1913, wrote Roscoe, who was then at Ft. Worden, Washington, stating the proposed terms in substance as follows: (1) Edgar to pay the costs recovered against him; (2) Roscoe and Mrs. Gray to waive any claim to the personal property, consisting of a few promissory notes of doubtful value; (3) they also to forego the right to an accounting with Edgar in respect to the affairs of the Beard Fruit Company, allowing Edgar to retain all moneys secured from that source and then in his possession; (4) the latter to liquidate all unpaid charges of administration upon the decedent's estate in Oregon and Washington, including Roscoe's fee as executor, and to pay whatever sum might be allowed by the County Court of Multnomah County for legal services performed, and also embracing $250 which had then been awarded for that purpose; (5) Edgar to pay the specific legacies of $1,700; (6) Roscoe and Mrs. Gray to receive from the other devisees and from the Beard Fruit Company quitclaim deeds of real property valued at $40,750, such estimate to be computed upon what was known as the conservative inventory made by the testator January 1, 1910, the particular tracts to be selected by the adverse party. This list of real property contains what is known as the "selling" price, amounting to $202,050, and a "conservative" estimate, aggregating $128,450. The latter appraisal was, in consequence of the loss of title to some of the land by adverse possession, reduced to $114,350, and by further concessions diminished to $101,875, of which the defendants were to receive a title in fee to real estate valued by their uncle at $40,750. In refer-

ring to the proposed settlement Mr. McCamant in his letter to Roscoe of July 22, 1913, says in part:

"While the other side is to have the choice and to give you what they see fit aggregating the figures above named, they really have but little choice in the matter, as I can think of only four schemes by which the property can be divided. I have figured on it with a good deal of care and the allowance to you, if this settlement goes through, will be substantially one or other of the following four schedules of property: (1) River Front, $15,000; Slumann Hill, $1,000; Battle Ground, $8,000; Meadow Glade, $2,000; Washington Street House, $6,000; Broadway House, $6,000; Tabor Heights, $2,000; Orchard Heights, $750. Total, $40,-750.00."

Each of the other schedules contained the first three parcels of land so mentioned and other tracts. In his reply of July 26, 1913, Roscoe wrote Mr. McCamant in part as follows:

"After carefully considering your proposition I am constrained to say that I will agree to a settlement on the terms as outlined in your letter. I do this reluctantly."

An excerpt from another letter written by Roscoe July 30, 1913, is as follows:

"To be perfectly candid, Mr. McCamant, I shall feel rather relieved if the settlement does fail. Since agreeing to your proposition I feel as if I were shirking a plain duty."

Soon thereafter Mr. Seabrook notified plaintiffs that Mrs. Elizabeth Beard and Mrs. Cadwell acquiesced in the proposal and that Edgar had reluctantly assented thereto. The terms of the settlement were then left with R. A. Leiter, one of Edgar's attorneys, to work out the details. Having thus substantially concluded the agreement, the defendants subscribed their names to a writing prepared for them which reads:

"July 30th, 1913.

"Mr. Wallace McCamant,

"611 Electric Building, Portland, Oregon.

"Dear Sir: In confirmation of the contract and understanding under which you have been litigating at our instance since the autumn of 1910, in matters involving the estate of S. M. Beard, deceased, we agree that your fee shall be $5,000.00, payable at all events on or before the termination of the litigation. It is a part of our understanding that as much of this fee as possible shall be secured from the estate, but we agree that the fee will be paid at all events regardless of the allowance made to you as attorney for the executor. Whatever allowance is made you in that capacity will be regarded as a part of the fee above contracted for, and we will pay whatever additional sum is necessary to insure the receipt by you of the fee above specified.

"Very truly yours,

"S. ROSCOE BEARD.

"MARY B. GRAY."

In consequence of the failure of the residuary legatees to conclude a settlement of their property rights under the will of the testator, the plaintiffs declined further to prosecute Mrs. Elizabeth Beard's cause which was pending at Vancouver, Washington, and set for trial September 17, 1913, and they so notified the defendants. Upon further consideration, however, the plaintiffs concluded to try that suit, and so informed the defendants, but stated that in case of an adverse decision they would not appeal from the decree, believing it could not be reversed. Mr. McCamant appeared at the time and place appointed and tried that case in conjunction with A. L. Miller, an attorney whom he engaged to assist him. After all the testimony had been taken Mr. McCamant, who was then ready to argue the cause, postponed a discussion of the law and facts involved at the request of Judge

Miller, who thought a compromise could be concluded, but believed that if the issues were debated the ill feeling which the parties had cultivated would be intensified, thereby precluding all possibility of a compromise.    Mr. McCamant then settled with and paid Mr. Miller for the services which he had performed, whereupon the latter's employment as assistant attorney was terminated.    Judge Miller was then retained by the defendants, and on December 16, 1913, he secured a compromise of all the then existing controversies respecting a division of the property of the decedent's estate.    Pursuant to that settlement the suit which had been tried at Vancouver, Washington, was dismissed, and deeds were exchanged by the residuary legatees so that the defendants, as tenants in common, received title in severalty to the parcels of real property which they had agreed to accept.

In addition to the charge of $5,000 for attorneys' fees as specified in the defendants' letter of July 30, 1913, the plaintiffs paid on account of expenses incurred for their clients $18.65, making $5,018.65.    They received September 18, 1913, $50; four days thereafter they collected on a judgment which they secured for the defendants the costs amounting to $322.95; they were allowed attorneys' fees in administering upon the decedent's estate for Mrs. Gray $250, and for Roscoe $1,500—aggregating $2,122.95, thereby leaving due $2,895.70, for the recovery of which this action was instituted.

It is argued by defendants' counsel that, when the compromise first proposed was not accepted by their clients, they were notified by the plaintiffs that they would not proceed further with the trial of the Elizabeth Beard case then pending at Vancouver, Washington, thereby violating the terms of their agreement

faithfully to prosecute and defend any and all suits, actions and proceedings necessary to vest in the defendants an undivided two-fifths interest in all the property of which their uncle died seised or possessed, whereby the plaintiffs forfeited all right to any compensation for the services which they had performed, and, this being so, an error was committed in refusing to direct a verdict for the defendants. It will be remembered that, though the plaintiffs notified the defendants they declined further to prosecute the case mentioned, they did in fact appear at the time and place appointed and conduct the trial, engaging for that purpose an assistant attorney whom they paid for the services which he performed. It will also be kept in mind that, when all the evidence in the case had been received, Mr. McCamant was ready to make an argument, which was postponed at the request of Judge Miller, in order that another attempt to make a settlement might be made, and that a compromise was ultimately concluded, thereby avoiding the necessity of discussing the issues involved in that suit. It will thus be seen that the plaintiffs conducted all the litigation that arose after their employment in which the defendants were interested until a settlement of their difficulties was reached. The defendants engaged another attorney, Mr. J. N. Hart, who was present in court when Mrs. Elizabeth Beard's suit was tried, but he took no part therein, except to note what transpired in order that he might be better informed with respect to the errors supposed to have been committed than could have been obtained from a mere inspection of the record of the trial in case it should become necessary to take an appeal from an adverse decree, if any should be rendered against his clients. No damages are alleged or counterclaim set

forth in the answer herein by reason of the employ-
ment of Mr. Hart, whose services were rendered un-
necessary in consequence of the settlement that was
made.

It was admitted by defendants' counsel at the trial
of this action that the fee demanded by the plaintiffs
was reasonable and the services which they performed
were faithfully and ably conducted. After each of
the defendants had agreed upon the settlement which
was proposed, they subsequently refused to accede to
the stipulated terms, whereupon Mr. McCamant at
first informed them that unless they concluded a com-
promise the firm of which he was a member would not
further represent them at the trial of the cause then
pending at Vancouver, Washington, and they should
secure another attorney for that purpose. He later
notified them, however, he would try that suit in the
lower court, but would not appeal from an adverse
decree rendered therein, believing a reversal thereof
could not be obtained. He did try that case, and after
all the evidence had been received he postponed his
argument therein at the suggestion of Judge Miller,
who believed a final settlement could be made, and who
negotiated a compromise without consulting him. Is
it fair or just that under the circumstances detailed
the plaintiffs should be denied any compensation for
the faithful and valuable services which they per-
formed because of the alleged technical breach of
their contract of employment to litigate all questions
that might arise in order to vest in the defendants
the legal title to two fifths of the property devised
and bequeathed them by their uncle? In discussing
this question it must not be forgotten that no breach
of the contract of employment ever occurred, and that,
though the plaintiffs at first declined further to pro-

82 Or.—34

ceed in the trial of the Elizabeth Beard cause, they subsequently disavowed such conclusion, and so informed the defendants, pursuant to which notice they appeared at and conducted that trial.

1, 2. In *Allcorn* v. *Butler,* 9 Tex. 56, it was ruled that, when one attorney at law procures another to represent him in a case of which the client has notice and makes no objection, the client cannot afterward, when the attorney whom he employed sues for his fee, object to the right of the latter to make the substitution, and that a contract between attorney and client for a specific fee is not affected by a compromise of the suit. In deciding that case Mr. Justice WHEELER, speaking for the court, observes:

"The only question of the case deserving of notice is whether the defense of a failure of consideration was made out in evidence; and we are of opinion that it was not. The defendant, Allcorn received the professional services of Butler, in pursuance of their contract, through a series of years; and, although the latter did make the declaration that he could no longer attend to the case, he did not act in accordance with that declaration, but, on the contrary, engaged others to attend to the case for him. The acceptance of their services by the defendant precluded him from afterward objecting to the right of Butler to make the substitution. The fact that the defendant saw fit to compromise the suit did not deprive the attorney of his right to his fee."

The right of a client to compromise a suit or action without the knowledge or consent of his attorney, and even against his protest, is settled by our adjudications: *Jackson* v. *Stearns,* 48 Or. 25 (84 Pac. 798, 5 L. R. A. (N. S.) 390); *Jackson* v. *Stearns,* 58 Or. 57 (113 Pac. 30, Ann. Cas. 1913A, 284, 30 L. R. A. (N. S.) 639). Notwithstanding the existence of such right, it cannot be wrongfully exercised so as to deprive the attorney of

his compensation: 2 R. C. L. 1050. To the same effect, see, also, *Baldwin* v. *Bennett,* 4 Cal. 392; *Elk Valley C. M. Co.* v. *Willis,* 149 Ky. 449 (149 S. W. 894); *Kersey* v. *Garton,* 77 Mo. 645; *Whittle* v. *Tompkins,* 94 S. C. 237 (77 S. E. 929); *Myers* v. *Crockett,* 14 Tex. 257. The defendant's employment of Judge Miller to negotiate a final settlement of the entire controversy did not, in the absence of an agreement reducing the specified attorney fee, deprive the plaintiffs of the compensation stipulated to be paid them: *Townsend* v. *Rhea,* 38 S. W. 865 (18 Ky. Law Rep. 901); *Lipscomb's Admr.* v. *Castleman,* 147 Ky. 741 (145 S. W. 753).

3. A careful examination of the entire testimony given at the trial of this cause shows the plaintiffs are justly entitled to the attorney fee agreed upon; and, such being the case, no error was committed in denying the motion for a directed verdict in favor of the defendants.

4. It is maintained by defendants' counsel that his clients' letter of July 30, 1913, does not contain all the terms of the contract of employment, and, this being so, errors were committed in excluding over objection and exception evidence which was offered as tending to prove the entire conditions of that agreement. On the cross-examination of a witness for the plaintiffs their counsel objected to a question relating to the services which they were to perform. Thereupon the defendants' counsel observed, "We have a right to show what work they undertook to do," to which remark the court replied, "No question about that." The defendant S. Roscoe Beard, in referring to the written estimate of this property made by the deceased a week prior to his death, and alluding to the plaintiffs' contract of employment, testified:

"The agreement, as I have always understood it, was that Mr. McCamant was to reduce to the possession of the executor all of the contested properties in this inventory."

In ruling upon an objection to the admission of testimony offered the court said:

"You are confronted with this document of July 30, 1913, which I hold now contains the terms of the agreement, in so far that it fixes the amount, the source from where it is to come, and the time when it is to be paid. As to what services they [the plaintiffs] were to perform, that is another matter. Your question does not go to that."

As illustrating the view which the court entertained respecting the letter referred to, a part of its charge to the jury reads:

"At this point I will instruct you that the contract between the plaintiffs is set forth in Exhibit 'A,' although that contract does not set forth fully what the services were to be. That matter you are to determine. But who it was to be paid to, how it was to be paid, and when it was to be paid are all fixed by Exhibit 'A,' and I instruct you that Exhibit 'A'—that the agreement as set forth by Exhibit 'A'—was a contract to litigate certain questions, a contract to conduct litigation. It was not a contract to effect a settlement or to get results. It was distinctly a contract of employment as attorneys to conduct litigation."

From the remark of the court to which attention has been called on this branch of the case, and from the part of the charge quoted, it will be seen that the defendants were permitted fully to prove what services the plaintiffs were to perform. The only limitation placed by the court upon the letter of July 30, 1913, in excluding testimony related to the amount of the fee, when it was payable, and the sources from which the money was to be derived. As these items

were specified in the writing the court properly excluded all testimony relating thereto. The other matters, however, not so indicated in Exhibit 'A' were under the general rule of evidence correctly held to be admissible: *Jones* v. *Dove,* 6 Or. 188; *American Contract Co.* v. *Bullen Bridge Co.,* 29 Or. 549 (46 Pac. 138); *McKinney* v. *Statesman Publishing Co.,* 34 Or. 509 (56 Pac. 651); *Ruckman* v. *Imbler Lumber Co.,* 42 Or. 231 (70 Pac. 811); *Williams* v. *Mt. Hood Ry. & P. Co.,* 57 Or. 251 (110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177); *Stuart* v. *University L. Co.,* 66 Or. 546 (132 Pac. 1, 1164, 135 Pac. 165); *Holmboe* v. *Morgan,* 69 Or. 395 (138 Pac. 1084). No error was committed in the respect alleged.

5. The plaintiffs collected on a judgment costs amounting to $322.95, which sum the court did not require should be paid over to the defendants. This money had been advanced by them to pay expenses to be incurred in making preparation for the trial of causes, and it is argued that, as the deposit was made for a special purpose, no attorney's lien could attach to it. The object for which the money was advanced had been accomplished, and the costs thus having come into the plaintiffs' possession in the course of their employment made the sum of money so received equivalent to a general deposit to secure the payment of their professional compensation, and hence a retaining lien attached: *State* v. *Lucas,* 24 Or. 168, 173 (33 Pac. 538, 540); 2 R. C. L. 1065; *Andrews* v. *Morse,* 12 Conn. 444 (31 Am. Dec. 752, and note at page 759).

6. The defendant S. Roscoe Beard having testified that after declining to try the Elizabeth Beard case Mr. McCamant telephoned he would attend the hearing of that cause, but under no circumstances would he carry the case to the Supreme Court of Washing-

ton, was asked by his counsel: "Did you take that to
be final?" The witness answered: "I certainly did,
and employed another attorney. Q. Was it final? A.
It certainly was." An objection was interposed to
the inquiry on the ground that it called for a con-
clusion of the witness. Before any ruling thereon was
made the defendants' counsel inquired: "What, if any-
thing, did Mr. McCamant do after that?" The plain-
tiffs' counsel then moved to strike out the answer to
the inquiry: "Was it final?" Thereupon the court
remarked: "The answer will have to be stricken out.
An exception is allowed." It is contended by defend-
ants' counsel that an error was thus committed. A
compromise of all the controverted questions involved
in a settlement of the decedent's estate having been
accomplished, it was not essential to take a decree in
the Elizabeth Beard suit, which had been tried, nor
was it necessary to prosecute an appeal from a final
determination in that case to the Supreme Court of
the State of Washington. If a review of the decree
had been required, and by reason of the plaintiffs'
refusal to prosecute it the defendants were obliged
to obtain other counsel for that purpose, the witness
might, under the conditions supposed, have testified
that Mr. McCamant's declination was final. The tes-
timony so stricken out was a mere conjecture amount-
ing to nothing more than a conclusion of the witness,
which was clearly objectionable and properly stricken
out.

7. The defendants' counsel inquired of S. Roscoe
Beard: "Coming down now to the settlement of
December, 1913, I will ask you to state why that settle-
ment was entered into." An objection to this ques-
tion on the ground that it was immaterial was sus-
tained and an exception allowed. Judge William

Smith, the father-in-law of Roscoe, on direct examination for the defendants was asked by their counsel: "Now, what did you do, or S. Roscoe Beard, in connection with yourself, in reference to the employment of other counsel?" The witness replied: "We proceeded to secure other counsel. Q. Why did you do that?" An objection to the inquiry on the ground that the court had already ruled upon the question was sustained, and an exception allowed.

It is argued by defendants' counsel that the testimony so excluded was admissible, as tending to substantiate an averment of the answer:

"That by reason of the * * hostile conduct and attitude of plaintiffs toward defendants, designed by plaintiffs to that end, these defendants were harassed, annoyed and embarrassed and hindered to such an extent that they were unable to proceed with said litigation, and were thereby compelled to enter into a compromise agreement with their opponents."

The testimony shows that the defendants had employed Mr. J. N. Hart, a competent attorney, to attend the trial of the Elizabeth Beard case, so that he might from a personal observation possibly be better prepared to take an appeal from an adverse decree than he could have been from an inspection of a transcript of the testimony received in that case. No evidence was offered by the defendants tending to show they were prevented or hindered by any act of or notice given them by the plaintiffs from taking a decree in the case tried at Vancouver, Washington, or from reviewing such final determination if it were necessary. If it had appeared that the defendants for any reason had been unable to procure other counsel, or if by fraud they had been deprived of a fair trial of the Elizabeth Beard suit, a foundation might thus have been established for the admission of the

·answers sought to be elicited by the inquiries to which objections were made. If the plaintiffs did anything warranting an inference that they violated the terms of their contract of employment, evidence thereof was held admissible and was received for that purpose. Responding to the alleged breach of such agreement the defendants had the right freely to state what they did or were compelled to forego in consequence thereof. What the mental attitude of a witness was or his opinion as to a hypothetical statement of facts could not be material, and no error was committed in these respects.

8. It is maintained that an error was committed in charging the jury as hereinbefore quoted, in that such instruction improperly assumes Exhibit "A" embraced the entire contract; that such writing does not state whether it is an agreement to effect a settlement or to get results; that the part of the charge quoted takes from the jury any consideration of what the plaintiffs were to do for the defendants; and that it directs no services should be considered except such as were performed in conducting litigation. A casual glance at the instruction will show that the court considered the letter of July 30, 1913, as complete within itself only in the particulars specified, and the jury was distinctly told the contract did not fully set forth what services the plaintiffs were to render. The complaint sets forth the discordant assertions of the respective parties as residuary legatees to the testator's property, and substantially alleges that the plaintiffs were employed by the defendants to litigate the conflicting claims to the end that they might be adjudged to be the owners of two-fifths interest in such property. The word "litigate" as used in the initiatory pleading limits the service alleged to have been engaged to

testing or trying for their clients the validity of disputed claims by suits, actions or proceedings in courts of law or equity. The averment of the complaint referred to necessarily excludes an employment to effect a settlement or to get results, but shows what the plaintiffs were to do for the defendants. It is not believed the instruction complained of can reasonably be construed as directing the jury to consider no services performed by the plaintiffs except such as were rendered in litigating causes for their clients.

9. In another instruction, the sufficiency of which is challenged, the court said:

''If the plaintiffs did conduct all the litigation that was conducted for the purpose of accomplishing the end contemplated by the parties, then they are entitled to recover. * * If they failed to conduct, that is, to appear in and argue and present any cases that were presented or conducted or argued, then they have failed in their contract. It was not necessary that either Snow or McCamant should appear personally; * * but they were to conduct, either by themselves, or persons employed by them, whatever litigation was necessary. Now, if they did, by themselves, or by other persons employed by them, conduct, appear in, and argue all the litigation that was conducted, argued, or tried, then they have fulfilled their contract. That is the matter to be determined, not whether the litigation was settled, not whether the parties came to an agreement, but did these gentlemen fulfill their obligations? And you will determine that by what they did.''

It is argued that this instruction, like the preceding, emphasizes the single idea which the court seemed to entertain, that the contract of employment requires the plaintiffs to do nothing more than conduct litigation; that if any of the controverted questions were settled by the agreement of December 16, 1913, through

the efforts of other attorneys whose services were
necessitated by the failure and refusal of the plain-
tiffs to keep their engagement, the benefits of the com-
promise inured to the latter as though they had tried
all the issues that were involved; that the plaintiffs
were required by the terms of their agreement per-
sonally to conduct all the business pertaining to a
settlement of the decedent's estate so as to vest in the
legatees the respective interest in the testator's prop-
erty to which each was entitled, and the performance
of such services could not legally have been delegated
to or exercised by another attorney. The testimony
shows that the plaintiffs frequently conferred with the
defendants respecting their rights; that a part of the
probate work in Multnomah County, Oregon, which
was not contemplated by the terms of the agreement
was performed by Mr. McCamant; and that he did
many things for the defendants not within the letter
of the agreement. No extra charge, however, is made
for performing such services. Nor does the answer
set forth any counterclaim or specify any amount as
damages sustained by the defendants by reason of the
plaintiffs' failure to keep and perform their contract.
If, under such circumstances, the plaintiffs performed
all the services required of them until the compromise
was concluded, it is difficult to see how the defendants
could have been prejudiced by the instruction under
consideration when no counterclaim was interposed.
No services were delegated by the plaintiffs to another
attorney. An assistant counsel was employed, and his
compensation was paid by them, but at all times they
supervised and conducted the trials.

10. It is contended an error was committed in charg-
ing the jury as follows:

"In order to entitle the plaintiffs to recover in this action they must have completely performed the services agreed by them to be performed; and if you find from the evidence the plaintiffs failed in any substantial particular to perform their contract of employment, your verdict should be for the defendants. They must have completely performed the services. Of course, whenever people settle the litigation, then there is nothing to perform. There was nothing to do after this matter was settled by the agreement of December 16th. That ended the whole litigation."

It is believed this instruction correctly stated the law applicable to the facts involved when the language employed is read in connection with the rule by which an attorney is entitled to a specific fee, notwithstanding his client may have compromised the controversy: *Allcorn* v. *Butler,* 9 Tex. 56.

11. Complaint is made of the following instruction:

"It appears that the agreement of the parties was not reduced to writing when they started. It was reduced to writing on July 30, 1913, and is the celebrated Exhibit 'A,' which I have already told you is a contract to litigate. I instruct you that this contract set forth in Exhibit 'A' is binding upon the parties to the litigation and measures the rights of the respective parties. If you find that the plaintiffs performed the services for which the defendants agreed to pay them the sum of money mentioned, then your verdict will be for the plaintiffs in the amount named in the contract, less the credit which the plaintiffs admit the defendants are entitled to."

Instructions should be construed in their entirety, and not by disconnected clauses: *Wellman* v. *Oregon Short Line Ry. Co.,* 21 Or. 530 (28 Pac. 625); *Smitson* v. *Southern Pac. Co.,* 37 Or. 74 (60 Pac. 907); *Wadhams* v. *Inman,* 38 Or. 143 (63 Pac. 11); *Farmers' Bank* v. *Woodell,* 38 Or. 294 (61 Pac. 837, 65 Pac. 520);

*Sonniksen* v. *Hood River Gas & Electric Co.,* 76 Or.
25 (146 Pac. 980). Interpreting the instruction last
set forth with the part of the charge first hereinbefore
quoted, it is believed no error was committed as
alleged.

12. It is insisted that an error was committed in
telling the jury:

"When a client contracts with an attorney to pay
a stated sum for stated services, and thereafter settles
with his adversary, and thereby terminates the litiga-
tion, the attorney is entitled to recover the stipulated
fee. The client by going and settling the case cannot
deprive the attorney of his rights."

The language complained of correctly states the rule
applicable to such a state of facts as has hereinbefore
been determined. It is argued, however, that this in-
struction permitted the plaintiffs to take advantage of
their own wrong in refusing further to prosecute the
Elizabeth Beard suit, thereby compelling the defend-
ants to enter into the compromise agreement. It will
be remembered that, though the defendants were in-
formed by the plaintiffs that they would not further
represent them in the trial of the cause, such notice
was countermanded, and they did try that suit. Pend-
ing a final determination, which was postponed in order
to allow the defendants to conclude a settlement, a
compromise was made without conferring with the
plaintiffs. If the defendants sustained any loss by
the plaintiffs' conduct, it is difficult to understand why
they did not allege in the answer in what sum of
money, if any, they were damaged. In the absence
of such an averment, no error was committed in the
respect mentioned.

Other errors are assigned, but a careful examina-
tion thereof, when viewed in the light of the entire

transcript before us, leads us to the conclusion that the judgment should be affirmed.

It is therefore so ordered.                AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BEAN concur.

MR. JUSTICE BURNETT taking no part in the consideration of this case.